Ian Y. LIND, Plaintiff,

v.

Gary G. GRIMMER, Linda K., Rosehill, James C.F. Wang, Robert Y. Watada, Individually, and in their capacities as Commissioners of the Campaign Spending Commission, State of Hawaii, and Jack M.K. Gonzales, Individually, and in his capacity as the Executive Director of the Campaign Spending Commission, State of Hawaii, Defendants.

Civ. No. 92–00415 ACK.

United States District Court, D. Hawai'i.

April 20, 1993.

Clayton C. Ikei, Honolulu, HI, for plaintiff.

Warren Price, III, Atty. Gen., HI, Steven S. Michaels, Robert A. Marks, Patricia Green Riley, Office of the Atty. Gen., Honolulu, HI, for defendants.

KAY, Chief Judge.

***ORDER GRANTING PLAINTIFF'S MO-TIONS FOR SUMMARY JUDGMENT AND FOR A PERMANENT INJUNC-TION AND DENYING DEFEN-DANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT***

### *INTRODUCTION*

This case is now before the Court on Plaintiff's motion for summary judgment and Defendants' cross-motions for judgment on the pleadings, or, in the alternative, for summary judgment.

Plaintiff seeks: (1) a declaratory ruling that Section 11–216(d)[1], Hawaii Revised

---

1. Hawaii Revised Statutes, Section 11–216(d) reads as follows:

§ 11–216. Complaints, investigation, and notice.

&ast; &ast; &ast; &ast; &ast; &ast;

(d) Until a determination of probable cause is made by the commission, all proceedings,

Statutes ("HRS"), is unconstitutional and invalid because it violates the Plaintiff's rights of Freedom of Speech and Freedom of the Press in violation of the First and Fourteenth Amendments. to the United States Constitution and 42 U.S.C. § 1983; and (2) a permanent injunction enjoining the enforcement of HRS § 11–216(d).

Defendants oppose Plaintiff's motion for summary judgment and seek: (1) judgment on the pleadings, or summary judgment that HRS § 11–216(d) is constitutional as applied to "charging parties"; or (2) in the alternative suggest this Court certify HRS § 11–216(d) to the Hawaii Supreme Court for a limiting construction.

The issues presented are: (1) whether HRS § 11–216(d) is constitutional in its present form; (2) whether HRS § 11–216(d) is constitutional in the limited use proposed by Defendants; and (3) whether HRS § 11–216(d) should be certified to the Hawaii Supreme Court for a limiting construction.

For the reasons discussed below, this Court grants Plaintiff's motion for summary judgment and for a permanent injunction and denies Defendants' motion for judgment on the pleadings, or in the alternative, motion for summary judgment.

### FACTUAL SUMMARY

Plaintiff, Ian Lind is author and publisher of the "Hawai'i Monitor," an independent non-partisan newsletter that focuses on election campaign issues. On March 18, 1992, Plaintiff filed a complaint with the Campaign Spending Commission against the University of Hawaii Professional Assembly ("UHPA"). Plaintiff alleged that UHPA had violated certain Hawaii statutes by failing to fully disclose its contributions to political candidates and by making excessive, prohibited campaign contributions to Governor John Waihee's re-election campaign..

Plaintiff reported in the June 1992 issue of the "Hawai'i Monitor" the fact that a complaint against UHPA had been filed with the Campaign Spending Commission. The article was reprinted, with Plaintiff's permission, in a University of Hawaii student newspaper.

Subsequently, UHPA sought clarification from the Campaign Spending Commission as to the applicability of HRS § 11–216(d) to the proceedings initiated by Plaintiff's complaint. The Campaign Spending Commission decided to treat this requested clarification as a complaint against Plaintiff for violation of HRS § 11–216(d).

Upon learning of the pending charge for violation of HRS § 11–216(d), Plaintiff filed this lawsuit for equitable and injunctive relief declaring HRS § 11–216(d) unconstitutional under the Free Speech and Free Press provisions of the First Amendment to the United States Constitution, made applicable to the States through the Due Process Clause of the Fourteenth Amendment.

---

including the filing of the complaint, investigation, and hearing shall be confidential unless the person complained of requests an open hearing. In the event the commission determines that probable cause does not exist, the complaint shall be dismissed and the entire record of the proceedings shall be kept confidential at the option of the person complained of.
Haw.Rev.Stat. § 11–216(d) (1988 & Supp.1992).
　Violations of HRS § 11–216(d) are covered by HRS § 11–228 which reads:
　§ 11–228. **Penalties; relief.**
　(a) Any person violating any provision of this subpart [B. Election Campaign Contributions and Expenditures; HRS 11–191 through HRS § 11–229] other than in section 11–193(b)(1), shall be punishable in the manner prescribed as follows:
　(1) If a natural person, the person shall be guilty of a petty misdemeanor and shall be subject to the penalties specified therefor; or

(2) If a corporation, organization, association, or labor union, it shall be punished by a fine not exceeding $1,000; and
　(3) Whenever a corporation, organization, association, or labor union violates this subpart, the violation shall be deemed to be also that of the individual directors, officers, or agents of the corporation, organization, association, or labor union, who have knowingly authorized, ordered, or done any of the acts constituting the violation.
　(b) Any person may sue for injunctive relief to compel compliance with this subpart.
　(c) The provisions of this section shall not be construed to prohibit prosecution under any appropriate provision of the Hawaii Penal Code ...
Haw.Rev.Stat. § 11–228 (1988 & Supp.1992).

On July 17, 1992, the parties submitted to this Court a Stipulation of Dismissal with Prejudice of all Claims whereby the parties agreed that HRS § 11–216(d) was unconstitutional.

By order dated September 25, 1991, this Court rejected the parties' July 17, 1992, stipulation, stating its reluctance to overturn an enactment of the Hawaii Legislature without careful consideration and solid caselaw in support of its decision.

By stipulation filed with this Court on February 23, 1993, the parties have vacated their prior stipulations. The Department of the Attorney General is now "determined to defend § 11–216(d) as applied in this instance to 'charging parties' in Campaign Spending Commission proceedings, who knowingly partake of the burdens of the confidentiality provisions when they invoke the Commission's processes, and in light of the important interests in confidentiality as furthering the important First Amendment value of free speech and association." Def. Cross–Motion For Judgment On The Pleadings, Or, In The Alternative, For Summary Judgment at 2.

### DEFENDANTS' POSITION

Defendants set forth the following arguments in support of upholding as constitutional HRS § 11–216(d):

1. This case does not involve the rights of third-party non-participants to confidential state proceedings, as were at issue in *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535 (1978). The case only deals with "charging" parties who bring a complaint under HRS § 11–216(d).

2. HRS § 11–216(d) does not (1) prohibit Mr. Lind from complaining generally (and publishing) his opinion that UHPA had violated the campaign spending laws; (2) prohibit Mr. Lind from filing a complaint with the Commission, and also complaining generally (and publishing) his opinion that UHPA had violated the campaign spending laws. HRS § 11–216(d) only requires Mr. Lind to maintain the confidentiality of the fact of his formal complaint and those facts of the investigation or hearing.

3. HRS § 11–216(d) can be read to apply only to Commission staff. Since § 11–216(d) only makes the "proceedings," or "the entire record of the proceedings" subject to confidentiality and since the sanctions imposed by § 11–228 and § 11–229 apply only to any "person violating any provision of this subpart," the statutory scheme, read as a whole, is susceptible to an interpretation that only persons with control over "the proceedings" or "the entire record" are subject to prosecution.

4. Assuming, *arguendo*, that HRS § 11–216(d) applies to information about the facts of "the proceeding" in the possession of the charging party, the law is constitutional in light of the reasoning of the Supreme Court of the United States in *Cohen v. Cowles Media Co.*, 111 S.Ct. 2513 (1991).

5. In any event, the reasons for confidentiality in the campaign spending context are compelling, and outweigh any First Amendment interest Mr. Lind might have in violating the confidentiality provision of the campaign spending laws because the targets of campaign spending complaints are private citizens, organizations, and candidates, in their personal capacities, exercising some of the most fundamental rights of free speech.

6. Even if Mr. Lind's statements about UHPA are protected, the regulation of speech is not justified on the basis of "the content of the speech" which Mr. Lind wishes to make about the sort of proceedings at issue here.

7. Where the Commission has departed from proper standards in assessing "probable cause," and thus in sealing campaign spending complaint proceedings, the remedies of common law mandamus lie as a charging party's source of relief. Even if no such remedies existed, Hawaii has a compelling interest in delegating final discretion to the Campaign Spending Commission

over the issue whether further litigation would be "baseless."

8. Section 11–216(d), like a general noise ordinance, is "content neutral" and sufficiently tailored to validly promote Hawaii's interests. In any case, the Act " 'is narrowly drawn to achieve that end.' "

9. The statute is at the very least plainly constitutional insofar as it requires confidentiality pending the probable cause determination based on the reasoning in *Kamasinski v. Judicial Review Council*, 797 F.Supp. 1083 (D.Conn.1992).

10. To whatever extent this Court is not confident that the statute is constitutional, it should take the step of either construing the statute narrowly itself or stay the proceeding pending a certification of the issue to the Supreme Court of Hawaii under Appellate Rule 13.

### PLAINTIFF'S POSITION

Plaintiff sets forth the following arguments in support of his position that HRS § 11–216(d) is unconstitutional:

1. There does not appear to be any overriding State purpose in the enactment of HRS § 11–216(d). Legislative history indicates only that the intent of the law was to provide for confidential hearings to insure that "due process shall be provided to anybody complained of."

2. Based on the United States Supreme Court's decision in *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535 (1978), the Fourth Circuit's decision in *Baugh v. Judicial Inquiry and Review Commission*, 907 F.2d 440 (4th Cir.1990), the Federal District Court of Rhode Island's decision in *Providence Journal Co. v. Newton*, 723 F.Supp. 846 (D.R.I.1989), and this Court's prior order in *John Roe v. Akamine, et al.* (Civil No. 91–00252 DAE), HRS § 11–216(d) is unconstitutional.

In opposition to the Defendant's cross-motions and in reply to Defendant's opposition, Plaintiff further argues:

3. The statute by its very terms does not, as Defendants propose, confine its application to complaining participants or to employees of the Campaign Spending Commission.

4. The statute is unconstitutionally overbroad, *Board of Airport Com'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 107 S.Ct. 2568 (1987); *Forsyth County, Ga. v. Nationalist Movement*, 112 S.Ct. 2395 (1992), and cannot be narrowly construed. *Board of Airport Com'rs of Los Angeles*, 482 U.S. at 575–76, 107 S.Ct. at 2572–73.

5. Defendant's reliance on *Cohen v. Cowles Media Co.*, 111 S.Ct. 2513 (1991), is misplaced because, in this case, Plaintiff's only means of redress is that of complaining to the Campaign Spending Commission.

6. The subject matter of the instant statute is not "content-neutral" and the "exacting scrutiny" test must be applied to determine whether Section 11–216(d) meets constitutional muster. The statute does not meet the "exacting scrutiny" test. *Daily Herald Co. v. Munro*, 838 F.2d 380 (9th Cir.1988).

### DISCUSSION

As an initial note, this Court is well aware that a federal court should not reach a constitutional issue if it does not have to. *See, e.g., Ashwander v. TVA*, 297 U.S. 288, 341–56, 56 S.Ct. 466, 480–87 (1936). In this case, however, the constitutional question is unavoidable. The constitutionality of HRS § 11–216(d) was squarely presented to this Court from the start. The alternatives to addressing the constitutionality of HRS § 11–216(d) are: (1) for this Court to, itself, narrowly construe HRS § 11–216(d); or (2) to certify HRS 11–216(d) to the state supreme court for a narrowing construction. For the reasons to be discussed below, this Court declines to narrowly construe HRS § 11–216(d) and finds that HRS § 11–216(d) does not meet the test for certification to the state supreme court.

## A. *Applicable Standards*

### 1. Judgment on the Pleadings

■ Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Doleman v. Meiji Mutual Life Ins. Co.,* 727 F.2d 1480, 1482 (9th Cir.1984).

■ In reviewing the defendant's motions under Fed.R.Civ.P. 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiff's allegations. *Hoeft v. Tucson Unified School Dist.,* 967 F.2d 1298, 1301 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989).

When the district court goes beyond the pleadings to resolve an issue, the motion is properly treated as a motion for summary judgment. Fed.R.Civ.P. 12(c); *Hal Roach Studios v. Richard Feiner and Co.,* 896 F.2d 1542, 1550 (9th Cir.1989); *Bonilla v. Oakland Scavenger Co.,* 697 F.2d 1297, 1301 (9th Cir. 1982).

### 2. Summary Judgment

■ Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. *T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, " '*specific facts* showing that there is a genuine issue for trial.' " *Id.* (quoting Fed. R.Civ.P. 56(e)) (emphasis in original). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593 (1968)). Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790 (1979).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (footnote omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing, *Matsushita,* 475 U.S. at 587,

106 S.Ct. at 1356.). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

### B. First Amendment Framework

 The United States Supreme Court analyzes regulations which abridge "protected speech"[2] by first determining whether the particular restrictive regulation is "content-based"[3] or "content-neutral."[4] *See generally Police Department v. Mosely,* 408 U.S. 92, 92 S.Ct. 2286 (1972); *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286 (1980); *Perry Educ. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 103 S.Ct. 948 (1983); *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746 (1989). "Content-based" restrictions of protected speech are subject to strict scrutiny and require a governmental showing that the regulation in question is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end, utilizing the least restrictive means possible. *See, e.g., Carey,* 447 U.S. at 461, 100 S.Ct. at 2290.

 "Content-neutral" restrictions of protected speech are subjected to a lesser level of judicial scrutiny which varies with the characterization of the forum in which the state is attempting to restrict access. *Perry,* 460 U.S. at 45, 103 S.Ct. at 954–55. State restrictions of access to a "traditional public forum," which "by long tradition or by government fiat have long been devoted to assembly or debate," *Perry,* 460 U.S. at 45, 103 S.Ct. at 954–55, require a governmental showing that the regulation in question has been narrowly tailored to serve a significant state interest, but need not demonstrate that it is the least restrictive means of achieving the state's end. *Ward,* 491 U.S. 781, 797–801, 109 S.Ct. 2746, 2757–59 (1989). A "content-neutral" restriction of access to a traditional public forum satisfies the requirement of narrow tailoring so long as it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.*

### C. Court Treatment of Confidentiality Provisions

First Amendment challenges to confidentiality provisions have arisen in at least three differing contexts: (1) state government ethics commission proceedings; (2) judicial inquiry commission proceedings; and (3) grand jury proceedings. While this case concerns complaints regarding campaign spending provisions, the governmental interests put forth in other settings as justification for the restrictions placed on free speech and freedom of press are helpful to the resolution of this case.

### The Seminal Case—Landmark Communications, Inc. v. Virginia

In *Landmark Communications, Inc. v. Virginia,* 435 U.S. 831, 98 S.Ct. 1535 (1978), the United States Supreme Court addressed the constitutionality of a state statute protecting the confidentiality of complaints of

---

2. The speech at issue in this case concerns public discussion of the existence and substance of a complaint regarding excessive and prohibited campaign contributions to the Governor's re-election campaign. It is beyond question that this is speech protected by the First Amendment. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720 (1964) ("debate on public issues should be uninhibited, robust, and wide-open"); *Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 2293 (1979) (expression on public issues rests "on the highest rung of the hierarchy of the First Amendment values").

3. A "content-based" regulation restricts speech precisely because of the ideas or information that the speech contains or because of its general subject matter. Because such content discrimination so fundamentally contradicts the princi-

ples underlying the First Amendment, "content-based" regulations are subjected to the strictest scrutiny utilized by federal courts to analyze the legitimacy of governmental interference with speech. *See Police Dept. v. Mosely,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2290 (1972) ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

4. A "content-neutral" regulation involves an incidental interference with speech merely as a by-product of the government's effort to regulate some evil unconnected with the content of the affected speech. *Ward v. Rock Against Racism,* 491 U.S. 781, 797–801, 109 S.Ct. 2746, 2757–59 (1989).

misconduct by state judicial officers.[5] The *Landmark* Court held that state laws prohibiting third persons, who are strangers to the inquiry, including newspapers, from divulging information regarding proceedings before a state commission which is authorized to hear complaints of misconduct by state officials, violate the First Amendment. *Id.* While recognizing the many valid concerns that are addressed by such statutes,[6] which were in effect in 47 jurisdictions, the Court applied the clear and present danger test[7] and held that the third parties' First Amendment rights to free speech and freedom of press outweigh the need for confidentiality.

However, the *Landmark* Court expressly excludes from its consideration statutes that seek to punish participants in the inquiry. *Landmark,* 435 U.S. at 837, 98 S.Ct. at 1540. The Court indicated the possibility that it would uphold a statute aimed only at those who actually participate in the inquiry.

*Landmark,* 435 U.S. at 837 n. 9, 98 S.Ct. at 1540 n. 9.

### 1. State Government Ethics Commission Proceedings

In *Providence Journal Co. v. Newton,* 723 F.Supp. 846 (D.R.I.1989), the federal district court of Rhode Island extended the reasoning of *Landmark* to a statute which required all individuals before the Rhode Island Ethics Commission, whether participants in the inquiry or not, to keep confidential the fact and content of any complaint filed unless and until a finding of probable cause by the Commission.[8] The *Newton* Court held the statute unconstitutional because it concluded that the state had failed to meet its burden under the compelling interest test.

Under the compelling interest test, the *Newton* Court utilized the strictest scrutiny in analyzing seven interests proffered by the state[9] against what the court considered to

---

**5.** Virginia Code § 2.1–37.13 (1973) implemented the state's constitutional mandate of confidentiality. It provided in relevant part:
"All papers filed with and proceedings before the Commission, and under the two preceding sections ... including the identification of the subject judge as well as all testimony and other evidence and any transcript thereof made by a reporter, shall be confidential and shall not be divulged by any person to anyone except the Commission, except that the record of any proceeding filed with the Supreme Court shall lose its confidential character." *Landmark,* 435 U.S. at 830–31 n. 1.

**6.** The *Landmark* Court expressly recognized three possible state interests:
First, confidentiality is thought to encourage the filing of complaints and the willing participation of relevant witnesses by providing protection against possible retaliation or recrimination. Second, at least until the time when the meritorious can be separated from the frivolous complaints, the confidentiality of the proceedings protects judges from the injury which might result from publication of unexamined and unwarranted complaints. And finally, it is argued, confidence in the judiciary as an institution is maintained by avoiding premature announcement of groundless claims of judicial misconduct or disability since it can be assumed that some frivolous complaints will be made against judicial officers who rarely can satisfy all contending litigants.
*Landmark,* 435 U.S. at 834–36, 98 S.Ct. at 1539–40 (1978).

**7.** The clear and present danger test is a variant of the strict scrutiny test of content-based regula-

tions of protected speech. Specifically, the *Landmark* court stated the test to mean: "the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished. . . . The danger must not be remote or even probable; it must immediately imperil." *Landmark,* 435 U.S. at 845, 98 S.Ct. at 1544 (citing *Bridges v. California,* 314 U.S. 252, 263, 62 S.Ct. 190, 194 (1941); *Craig v. Hernia,* 331 U.S. 367, 376, 67 S.Ct. 1249, 1255 (1947)).

**8.** The statute in question, R.I.Gen.Law Sec. 36–14–5(1), provided:
"No person shall knowingly and willfully make public any complaint or the content of any complaint filed under this chapter without the consent of the person against whom the complaint has been filed, unless and until an adjudicative panel of the commission renders a final decision on the complaint following (i) a probable cause finding by an investigating committee of the commission, pursuant to Section 36–14–12(d)(4) of this chapter and (ii) the conduct of an adjudicative hearing pursuant to Section 36–14–13 of this chapter.
*Providence Journal Co. v. Newton,* 723 F.Supp. 846, 849 (D.R.I.1989).

**9.** 1. to prevent a complainant with self serving motives from publicly discussing an unfounded complaint until the Commission has had an opportunity to rule thereon;
2. to minimize the injury to the reputation of a public official caused by adverse publicity from unfounded complaints;
3. to maintain the public's confidence in its elected officials by preventing the premature disclosure of unfounded complaints;

be "prototypical content-based regulations of protected speech." *Newton*, 723 F.Supp. at 854–59. Acknowledging that the requirement of confidentiality regarding Ethics Commission proceedings serves "legitimate interests of the State of Rhode Island," the *Newton* Court emphasized that the state's concerns are not "compelling enough to silence a citizen-critic of official conduct through the imposition of civil and criminal sanctions." *Id.* at 857.

In *Roe v. Akamine* (Civil No. 91–00252 DAE) (Sept. 26, 1991), this District Court, the Honorable David Ezra presiding, accepted the parties' stipulation to the unconstitutionality of HRS § 84–31(c), a statute dealing with confidentiality of complaints filed with the State of Hawaii Ethics Commission.[10] Section 84–31(c) is aimed at individuals, such as Plaintiff, who file the complaint, as well as third parties. The Order Approving Stipulation Of Settlement is silent on the issue of whether the Plaintiff there was the individual who filed the complaint, or whether that fact had any bearing on the constitutionality of the provision.

### 2. Judicial Inquiry Commission Proceedings

In *Baugh v. Judicial Inquiry and Review Commission*, 907 F.2d 440 (4th Cir.1990), the Fourth Circuit extended the reasoning of *Landmark* to statutes that seek to punish a person who files a complaint with the Judicial Inquiry and Review Commission for disclosing the fact that a complaint has been filed and for disclosing the action or non-action taken by the Commission.[11] While, the *Baugh* Court did not reach the ultimate issue of the statute's constitutionality,[12] it clearly found that such a statute is not "content-neutral." *Id.* at 445. Accordingly, *Baugh* holds that the appropriate test to be employed when scrutinizing such a statute is the compelling interest test. *Id.* at 445.

However, it should be noted that the statute at issue in *Baugh* is somewhat different than the Hawaii statute here at issue. The statute in *Baugh* prohibits participants in the inquiry from disclosing the fact that a complaint has been filed as well as what action the commission took on the complaint. *Id.* at 443. Once the record of the proceeding is filed with the state Supreme Court (for further action), it loses its confidentiality. *Id.* at 442. The Hawaii statute prohibits participants as well as non-participants, except the party complained of, from disclosing that a complaint has been filed, but only until the commission has made a determination of probable cause. HRS § 11–216(d), *see supra* p. 1 n. 1. If the commission determines that probable cause does not exist, the entire

---

4. to protect the complainants and witnesses from possible recrimination;

5. to facilitate the investigation of the complaint;

6. to prevent the use of a state agency to injure the reputation of another person; and

7. to prevent a complainant from enhancing the veracity and credibility of his complaint by invoking the name of the ethics commission.

*Newton*, 723 F.Supp. at 856.

10. HRS § 84–31 provided in relevant part:

Any ... individual, including the individual making the charge, who divulges information concerning the charge prior to the issuance of the complaint by the commission or if the investigation discloses that the complaint should not be issued by the commission, at any time divulges the contents of the original charge ... shall be guilty of a felony punishable by a fine of not more than $5,000.00 or imprisonment for not more than five years, or both....

*Roe v. Akamine* (Civil No. 91–00252 DAE) (Order Approving Stipulation Of Settlement) (Sept. 26, 1991).

11. The statute at issue, Va.Code § 2.1–37.13, reads in relevant part as follows:

"All papers filed with and proceedings before the Commission, ... including the identification of the subject judge as well as all testimony and other evidence and any transcript thereof made by a reporter, shall be confidential and shall not be divulged, other than to the Commission, by any person who either files a complaint with the Commission, or receives such complaint in an official capacity, or investigates such complaint, is interviewed concerning such complaint by a member, employee or agent of the Commission, or participates in any proceeding of the Commission, or the official recording or transcription thereof, except that the record of any proceeding filed with the Supreme Court shall lose its confidential character.

\* \* \* \* \* \*

Divulging information in violation of this section is a misdemeanor." *Baugh*, at 442.

12. The case is remanded to the district court for further analysis. *Baugh*, 907 F.2d at 445.

record remains confidential at the option of the person complained of. *Id.*

In *Doe v. State of Florida Judicial Qualifications Commission,* 748 F.Supp. 1520 (S.D.Fla.1990), a Florida district court considered the constitutionality of Article V, Section 12(d)[13] of the Florida Constitution which required confidentiality of all proceedings before the Judicial Qualifications Commission ("JQC") unless the Commission determined that probable cause existed *and* filed formal charges. *Doe,* 748 F.Supp. at 1522 (emphasis added). More specifically, the *Doe* Court considered the sole issue of "whether the First Amendment prohibits the JQC, insofar as it is charged with the responsibility of enforcing Article V, Section 12(d) of the Florida Constitution, from barring Plaintiff Doe from revealing the *fact* that he filed a complaint with the JQC." *Doe,* 748 F.Supp. at 1523 (emphasis in original).

Defendant Judicial Qualifications Commission offered eight state interests served by the confidentiality provision:

a. To prevent a complainant who might have self-serving motives from publicly discussing the fact of filing of a complaint that may prove to be unfounded until a preliminary investigation has been completed;

b. To minimize the risk of injury to the reputation of a judicial constitutional officer caused by any adverse publicity from unfounded complaints;

c. To maintain the public's confidence in its judicial officers by preventing the premature disclosure of the fact of filing of a complaint that may ultimately prove to be unfounded;

d. To protect the complainant and witnesses from possible pressure and recrimination;

e. To facilitate the investigation of the complaint;

f. To prevent the potential use of a constitutional agency to help injure the reputation of a judge;

g. To protect the constitutional right of privacy of a member of the Florida Bar who is also a constitutional officer—a judge;

h. To assure that the public policy behind the subject constitutional provision as adopted by the citizens of the State of Florida is protected consistent with the will of the people.

*Doe,* 748 F.Supp. at 1522–23.

Finding Article V, Section 12(d) to be a "content-based" restriction of protected speech, the *Doe* court applied with strict scrutiny the compelling interest test to JQC's stated justifications. *Id.* at 1524–25. While acknowledging that Florida surely has valid interests in maintaining the reputation of its judges and the integrity of its judiciary, the *Doe* Court considered this interest "plainly insufficient under controlling precedent to sustain this restriction on free speech." *Id.* at 1526. Similarly, the *Doe* Court found the possibility that a complainant might wrongfully use the fact of filing with JQC as a means to amplify and legitimate the claim unpersuasive and overstated in the degree to which publication of the fact of filing of the complaint would lead people to believe the complaint to be true. *Id.* at 1527. Further, the *Doe* Court found insufficient the state's proffered interests in facilitation of investigations, and in the protection of privacy interests of the accused judges. Holding the restriction unconstitutional, the *Doe* court stated that the government had "failed to set forth any compelling interests alone or in concert sufficiently to justify the application of § 12(d) to prohibit the truthful publication of the simple fact that a complaint has been filed by Plaintiff John Doe with the JQC." *Id.* at 1529.

In direct conflict with *Doe* and *Newton* is a decision of the district court of Connecticut which, upon similar analysis, held constitu-

---

**13.** Article V, Section 12(d) of the Florida Constitution reads as follows:

[A]ll proceedings by or before the commission shall be confidential; provided, however, upon a finding of probable cause *and* the filing by the commission with said clerk of such formal charges against a justice or judge such charges and all further proceedings before the commission shall be public.

*Doe,* 748 F.Supp. at 1522 (emphasis added).

tional a statute [14] making confidential certain proceedings before the state Judicial Review Council ("JRC"). *Kamasinski v. Judicial Review Council, et al.,* 797 F.Supp. 1083 (D.Conn.1992).

The Connecticut district court held that although, under the First Amendment, Connecticut may not prohibit witnesses or complainants from disclosing information contained in testimony or complaints to the Judicial Review Council, the state may, prior to a determination by the Council that there is probable cause, forbid disclosure of any information an individual obtains by virtue of his personal interaction with the Council inquiry. *Kamasinski,* 797 F.Supp. at 1097. Likewise, the state may also forbid, prior to a probable cause determination, disclosure of the fact of filing a complaint with the Council investigation. *Id.*

Like *Doe,* the *Kamasinski* Court applied the compelling interest test to what it agreed was a "content-based" restriction of protected speech. *Id.* at 1090. Unlike *Doe,* the *Kamasinski* Court found that there were sufficiently compelling government interests to justify the limitation on speech, which was narrowly drawn to achieve those ends. *Id.* at 1094.

The *Kamasinski* Court considered there to be " 'a very good analogy' between the proceedings of the JRC at the stage before probable cause is found and the proceedings of a grand jury." *Id.* at 1090. Drawing heavily on the grand jury analogy, the *Kamasinski* Court set forth the following interests in support of upholding the statute as constitutional:

1. "Given the confidentiality of the preliminary investigation, the JRC may dispose of meritless complaints—for example, complaints that on their face are utterly without basis or generated by apparent malice or bad faith—without lending any credibility to such complaints by appearing to conduct an extensive investigation." *Id.* at 1092

2. "Without confidentiality at the preliminary stage of judicial conduct review, Connecticut might have difficulty attracting and retaining high quality personnel for its judiciary if judges were to face continual abuse and harassment in JRC proceedings as a consequence of discharging their constitutional duties." *Id.*

3. "[I]f exposed to complaints in open, preliminary proceedings, Connecticut judges might tend to be intimidated or unduly influenced by belligerent litigants who would be more likely than others to commence a retaliatory campaign of harassment of the judge before the JRC.... The importance of judicial independence cannot be overemphasized ..." *Id.*

4. "[C]onfidentiality encourages complaints, assistance in investigating complaints, and complete and truthful testimony." *Id.* at 1093.

5. "By making preliminary investigations confidential, the JRC may also informally encourage infirm or incompetent judges to retire before the need for a hearing." *Id.*

In ruling that the Connecticut statute is constitutional as it applies to prohibiting disclosure of the fact that a complaint had been filed with JRC, the *Kamasinski* Court distinguished the Fourth Circuit's decision in *Baugh,* 907 F.2d 444, and the Florida and Rhode Island district court decisions in *Doe,* 748 F.Supp. 1520, and *Newton,* 723 F.Supp. 846.

*Kamasinski* discounted *Newton's* statement that there is "no principled way to distinguish the substance of an ethics complaint from the facts underlying it or to distinguish speech about such a complaint from general public criticism of the accused official." *Newton,* 723 F.Supp. at 852. Rather, the *Kamasinski* Court found persuasive Justice Scalia's reasoning in *Butterworth v.*

---

**14.** The Statute at issue, Conn.Gen.Stat. § 51–511(a), provided that:

"[a]ny investigation to determine whether or not there is probable cause that conduct under section 51–51i has occurred shall be confiden-

tial and any individual called by the commission for the purpose of providing information shall not disclose his knowledge of such investigation to a third party...."

*Kamasinski,* 797 F.Supp. at 1087.

*Smith*, 494 U.S. 624, 110 S.Ct. 1376 (1990) (a First Amendment challenge to confidentiality provisions in the grand jury context), wherein he stated: "like the fact that one has testified to a grand jury, the fact of the filing of a complaint, and the complainants actual testimony to the JRC, are 'in a way information of the *state's* own creation.'" *Kamasinski*, 797 F.Supp. at 1095 (quoting *Butterworth*, 494 U.S. at 636–37, 110 S.Ct. at 1383) (emphasis in original).

*Kamasinski* distinguished the Fourth Circuit's decision in *Baugh* as one which, although "correctly stating the standard of review as one of compelling state interests, ... fail[ed] to capture the panapoly of the state interests at issue." The *Kamasinski* court likewise distinguished the Florida district court's decision in *Doe* as one where the "discussion of the relevant state interests ... appear[ed] ... inadequate." 797 F.Supp. at 1095.

### 3. Grand Jury Proceedings

In *Butterworth v. Smith*, 494 U.S. 624, 110 S.Ct. 1376 (1990), the United States Supreme Court considered the constitutionality of a Florida statute [15] that prohibited grand jury witnesses from disclosing their knowledge of proceedings before the grand jury, including the contents and substance of their own testimony. The Court held that the statute violated the First Amendment insofar as it pro-

hibited witnesses from disclosing the contents of their testimony to the grand jury *after* the grand jury had expired. *Butterworth*, 494 U.S. at 633–35, 110 S.Ct. at 1382–83 (emphasis added).

Recognizing that the speech the Florida statute sought to restrict lay at the core of the First Amendment, the Supreme Court apparently applied a compelling interest test to the proffered state interests.[16] Agreeing that grand jury secrecy remains important to safeguard the state's proffered interests, the *Butterworth* Court did not agree that "those interests warrant a permanent ban on the disclosure by a witness of his own testimony once a grand jury has been discharged." *Butterworth*, 494 U.S. at 631–32, 110 S.Ct. at 1381. Striking down the statute, the Court stated:

> When an investigation ends, there is no longer the need to keep information from the targeted individual.... There is also no longer a need to prevent the importuning of grand jurors since their deliberations will be over. Similarly, the concern that some witnesses will be deterred from presenting testimony due to fear of retribution is, we think, not advanced by this prohibition ...
>
> \* \* \* \* \* \*
>
> Florida undoubtedly retains a substantial interest in seeing that "persons who

---

**15.** The relevant statute, Fla.Stat. § 905.27, provided in pertinent part that:

(1) A grand juror ... or any other person appearing before the grand jury shall not disclose the testimony of a witness examined before the grand jury ... except when required by a court for the purpose of:

(a) Ascertaining whether it is consistent with the testimony given by the witness before the court;

(b) Determining whether the witness is guilty of perjury; or

(c) Furthering justice.

(2) It is unlawful for any person knowingly to publish, broadcast, disclose, divulge, or communicate to any other person, or knowingly to cause or permit to be published, broadcast, disclosed, divulged, or communicated to any other person, in any manner whatsoever, any testimony of a witness examined before the grand jury, or the content, gist, or import thereof, except when

such testimony is or has been disclosed in a court proceeding.
*Butterworth v. Smith*, 494 U.S. at 627, 110 S.Ct. at 1378.

**16.** The *Butterworth* Court acknowledged three primary reasons in support of retaining grand jury secrecy in general:

First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceeding, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.
*Butterworth*, 494 U.S. at 630, 110 S.Ct. at 1380.

are accused but exonerated by the grand jury will not be held up to public ridicule...." *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 219, 99 S.Ct. 1667, 1673 (1979).... But even in those situations where the disclosure by the witness of his own testimony could have the effect of revealing the names of persons who had been targeted by the grand jury but exonerated, our decisions establish that *absent exceptional circumstances, reputational interests alone cannot justify the proscription of truthful speech.*

*Butterworth,* 494 U.S. at 634–35, 110 S.Ct. at 1382 (citing *Landmark,* 435 U.S. at 841–42, 98 S.Ct. at 1542–43) (emphasis added).

### Defendants' Authority—*Cohen v. Cowles Media Company*

The Defendant claims that the reasoning of *Cohen v. Cowles Media Company,* 111 S.Ct. 2513 (1991), controls this case.

In *Cowles,* the United States Supreme Court addressed the issue of whether the First Amendment prohibits a plaintiff from recovering damages, under state promissory estoppel law, for a newspaper's breach of a promise of confidentiality given to the plaintiff in exchange for information. Apparently analyzing the state promissory estoppel laws as "content-neutral" restrictions on protected speech, not requiring strict scrutiny, the Court held that a promissory estoppel action is not barred by the First Amendment. *Id.* at 2518.

Defendants claim that "like the newspaper that induced the source to turn over sensitive and newsworthy information, Mr. Lind can be deemed to have consented to the 'rules of the game' concerning his complaint." Defendants' Cross Motion at p. 7. Defendants assert that Plaintiff "cannot have his cake and eat it too: he cannot invoke the State's process except on the terms which the State has reasonably dictated concerning confidentiality." *Id.*

*Cowles* is inapplicable to this case for two reasons. One, Plaintiff in no way has entered into a contractual relation with the Campaign Spending Commission as was the case in *Cowles.* Defendant's argument that

Plaintiff had "consented to the rules of the game," states the proposition that if Plaintiff wishes to formally complain, he must follow the rule as dictated, regardless of the rule's constitutionality. Two, the *Cowles* Court did not apply the compelling interest test, as the *Baugh* Court makes clear should be applied to this case.

### D. Certification To The State Supreme Court

Defendants argue alternatively that this Court should certify the scope of HRS § 11–216(d) to the state Supreme Court for a limiting instruction.

The Ninth Circuit addressed the appropriateness of certification in *Burdick v. Takushi,* 846 F.2d 587 (9th Cir.1988), where it outlined a three-part test that federal courts should follow in determining whether to abstain from ruling on an ambiguous state statute:

> The Supreme Court has made it clear that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal question can be decided." *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327 (1984) (citing *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643 (1941)). Our circuit has adopted a three-part test to determine whether *Pullman* abstention is warranted. First, the proper resolution of the state law question at issue must be uncertain. Second, a definitive ruling on the state issue must potentially obviate the need for constitutional adjudication by the federal court. Third, the complaint must touch upon "a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *Bank of America Nat'l Trust and Savings Assoc. v. Summerland Cty. Water Dist.,* 767 F.2d 544, 546 (9th Cir.1985) (quoting *Canton v. Spokane School Dist. No. 81,* 498 F.2d 840, 845 (9th Cir.1974)).

*Burdick v. Takushi,* 846 F.2d at 588.

Justice O'Connor's concurring opinion in *Brockett v. Spokane Arcades, Inc.,* 472 U.S.

491, 105 S.Ct. 1794 (1985), sheds further light on the issue of certification:

> Although federal courts generally have a duty to adjudicate federal questions properly before them, this Court has long recognized that concerns for comity and federalism may require federal courts to abstain from deciding federal constitutional issues that are entwined with the interpretation of state law.... [W]here uncertain questions of state law must be resolved before a federal constitutional question can be decided, federal courts should abstain until a state court has addressed the state questions. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645 (1984). *See also Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236–37, 104 S.Ct. 2321, 2327–28 (1984).

> \* \* \* \* \* \*

> Where a state statute has never been construed or applied, it seems rather obvious that interpretation of the statute by a state court could substantially alter the resolution of any claim that the statute is facially invalid under the Federal Constitution..

> \* \* \* \* \* \*

> Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when, as is the case here, the state courts stand willing to address questions of state law on certification from a federal court." *Cf. Belloti v. Baird,* 428 U.S. 132, 150–51, 96 S.Ct. 2857, 2867–68 (1976).

*Brockett,* 472 U.S. at 508–510, 105 S.Ct. at 2804.

---

**17.** This Court is well aware of the United States Supreme Court's "usual ... practice ... [not] to proceed to an overbreadth issue ... before it is determined that the statute would be valid as applied." *Board of Trustees, State Univ. of N.Y. v. Fox,* 492 U.S. 469, 484–85, 109 S.Ct. 3028, 3037–38 (1989). In this case, the Court has followed that practice and considers the issue of overbreadth only in addition to the compelling interest analysis that is first considered.

## E. *Overbreadth*

### 1. Procedural Objections

 As an initial note, Defendants raise procedural objections to the appropriateness of this Court considering the issue of overbreadth.[17] Defendants argue that the issue of overbreadth is not properly before the Court because Plaintiff did not raise the issue in his motion for summary judgment, but raised the issue only in opposition and in reply to Defendants' cross motion.[18] *See* Def. Reply Memorandum, filed March 12, 1993. Defendants argue that Local Rule 220–4, which forbids a litigant from raising a new argument "for the first time in the reply," requires this Court to disregard the issue of overbreadth, or, alternatively only consider the issue of overbreadth in opposition to Defendants' motions, not in support of Plaintiff's motion.

This case is one with an unusual procedural history from the start. The parties to this action initially agreed to the unconstitutionality of HRS § 11–216(d) and submitted to this Court a stipulation thereon. This Court denied the parties' stipulation because it felt that additional examination of the purposes advanced by the Hawaii State Legislature in passing § 11–216(d) was required before the court could proceed with a "compelling interest analysis." *See* Order Rejecting Stipulation Of Dismissal. Defendants thereafter decided to defend the constitutionality of HRS § 11–216(d) as applied to "charging parties." From the start, however, this Court has been considering a facial challenge to HRS § 11–216(d), not simply an as-applied challenge. The parties' prior stipulation sought, and Plaintiff's current motion for summary judgment seeks both a declaratory ruling that HRS § 11–216(d) is unconstitutional and a permanent injunction enjoining the enforce-

---

**18.** Defendants further argue that since Plaintiff's opposition and reply memorandum was filed late, this Court should disregard the opposition and reply in its totality as untimely. *See* Def. Reply Memorandum, filed March 12, 1993. It is within the Court's discretion to fashion an appropriate remedy for late-filed memoranda. Local Rule 100–3. The Court's remedy need not entail disregarding arguments raised in late-filed memoranda. *Id.*

ment of HRS § 11–216(d).[19] *See Bullfrog Films, Inc. v. Wick,* 646 F.Supp. 492, 507 (1986), *aff'd,* 847 F.2d 502 (9th Cir.1988) ("A facial challenge means that the regulation could never be applied in a valid manner ... both species of challenge—facial and as applied—are questions of law which may be freely addressed.") (citing *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796–98, 104 S.Ct. 2118, 2124–25 (1984)).

Overbreadth falls within the ambit of issues a court can properly address when considering such facial challenges:

"[O]verbreadth is not used only to describe the doctrine that allows a litigant whose own conduct is unprotected to assert the rights of third parties to challenge a statute, even though "as applied" to him the statute would be constitutional. "Overbreadth" has also been used to describe a challenge to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest....

\* \* \* \* \* \*

Whether that challenge should be called "overbreadth" or simply a "facial" challenge, the point is that there is no reason to limit challenges to case-by-case "as applied" challenges when the statute on its face and therefore in all its applications falls short of constitutional demands.

*Secretary of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 965–66 n. 13, 104 S.Ct. 2839, 2851–52 n. 13 (1984).

Even if no party were to have raised the issue of overbreadth, there is authority for the proposition that a court may *sua sponte* raise issues concerning the facial validity of particular provision. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548,

2554 (1986) ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence.") (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2720, pp. 28–29 (1983)). *See also Bullfrog Films,* 646 F.Supp. at 507, *aff'd,* 847 F.2d 502 (9th Cir. 1988) (district court *sua sponte* declared unconstitutional a regulation because it was "apparent to the Court that [the] regulation is facially inconsistent with the First Amendment because it is vague[20] and requires a non-neutral content examination"). *C.f. Taxpayers for Vincent,* 466 U.S. 789, 796–99, 104 S.Ct. 2118, 2124–25 (1984) ("This 'overbreadth' doctrine has its source in *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736 (1940).... The Court has repeatedly held that such a statute may be challenged on its face even though a more narrowly drawn statute would be valid as applied to the party in the case before it. This exception from the general rule is predicated on *a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.*") (emphasis added).

Since, in this case, both Plaintiff and Defendants[21] have addressed the issue of overbreadth, and since this Court has, from the start, been considering invalidating HRS § 11–216(d) on its face, the Court finds it appropriate to address the issue of overbreadth both in opposition to Defendants cross motions and in support of Plaintiff's motion for summary judgment.

## 2. Case Law

The overbreadth doctrine, as developed by the United States Supreme Court, holds that

**19.** It is Defendants who are determined to defend HRS 11–216(d) "as applied to charging parties," not Plaintiff. *See* Def. Cross–Motions at 2, filed February 25, 1993. Plaintiff's challenge to the statute has always sought its permanent invalidation, not simply a ruling that as applied to him it is unconstitutional. *See* Pl. complaint at 6–7, filed July 2, 1992; Pl. Motion for Summary Judgment, filed February 1, 1993.

**20.** "Because vagueness closely parallels overbreadth in its deterrence of protected expression,

the analysis of excessive vagueness in the first amendment area closely parallels that of overbreadth: The expression deterred by a vague statute must be both real and substantial." TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–32 at 1035 (2nd ed. 1988).

**21.** Defendants address the issue of overbreadth in their March 12, 1993, reply memorandum.

1332

a law is void on its face if it "does not aim specifically at evils within the allowable area of [government] control, but ... sweeps with its ambit other activities that constitute an exercise" of protected expressive or associational rights. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–27 (1988) (citing *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736 (1940) (statute prohibiting picketing void on its face since it bans peaceful picketing protected by the first amendment)); *see also Board of Airport Com'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 107 S.Ct. 2568 (1987) (unanimously invalidating rule which proscribed *all* "First Amendment activities" in airport terminal). "A plausible challenge to a law as *void for overbreadth* can be made only when (1) the protected activity is a significant part of the law's target, and (2) there exists no satisfactory way of severing the law's constitutional from its unconstitutional applications so as to excise the latter clearly in a single step from the law's reach." TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–27.

In *Board of Airport Com'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 107 S.Ct. 2568 (1987), the Supreme Court, in striking down an airport regulation which banned all "First Amendment activities" stated:

Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face "because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared invalid." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794 (1985). A statute may be invalidated on its face, however, only if the overbreadth is "substantial."

*Board of Airport Com'rs of Los Angeles*, 482 U.S. at 574, 107 S.Ct. at 2572; *see also Forsyth County, Ga v. Nationalist Movement*, 112 S.Ct. 2395, 2400–2401 (1992) ("It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable.")

### 3. The Requirement of Substantial Overbreadth

"The doctrine of 'substantial overbreadth' is a criterion the Court has invoked to avoid striking down a statute on its face simply because of the possibility that it might be applied in an unconstitutional manner." *Joseph H. Munson Co.*, 467 U.S. at 964, 104 S.Ct. at 2851. "It is appropriate in cases where, despite some possibly impermissible application, the 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct....'" *Id.* (quoting *CSC v. Letter Carriers*, 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2897–2898 (1973)). "In such a case, the Court has required a litigant to demonstrate that the statute "as applied" to him is unconstitutional." *Id.*

"A statute drafted narrowly to reflect a close nexus between the means chosen by the legislature and the permissible ends of government is thus not vulnerable on its face simply because occasional applications that go beyond constitutional bounds can be imagined." TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–28 at 1025 (2nd ed. 1988).

### 4. Narrowly Construing a Facially Overbroad Statute

"[A] court can adopt an adequate saving construction only if the surviving portion of the statute clearly and unambiguously restricts conduct that is not privileged by the first amendment—and only such conduct. By pruning a statute of its overbroad sections, courts run the risk of leaving the remainder impermissibly vague." TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–29, at 1030 (2nd ed. 1988).

In *Board of Airport Com'rs of Los Angeles*, the United States Supreme Court, after determining that the statue was overbroad, considered whether the challenged regulation could be narrowly construed to withstand judicial invalidation, stating:

The difficulties in adopting a limited construction of the resolution are not unlike those found in *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316 (1964). At issue in *Baggett* was the constitutionality of several statutes requiring loyalty oaths. The *Baggett* court concluded that abstention would serve no purpose given the lack of any limiting construction, and held the statutes unconstitutional on their face under the First Amendment overbreadth doctrine ... Here too, it is difficult to imagine that the resolution could be limited by anything less than a series of adjudications, and the chilling effect of the resolution on protected speech in the meantime would make such a case-by-case adjudication intolerable.

*Board of Airport Com'rs of Los Angeles*, 482 U.S. 569 at 575–76, 107 S.Ct. at 2572–73.

### THE CASE AT BAR

#### A. The Test To Be Applied

First, it is clear, based on the reasoning of *Landmark* and *Baugh*, that HRS 11–216(d) is a "content-based" restriction on protected speech. The provision, even in its limited use proposed by Defendant, concerns public discussion of the existence of a complaint filed with the Campaign Spending Commission. This is a regulation that "restricts speech precisely because of the information that the speech contains." *Police Department v. Mosely*, 408 U.S. 92, 92 S.Ct. 2286. It is not a "content-neutral" regulation that "involves an incidental interference with speech merely as a byproduct of the government's effort to regulate some evil unconnected with the content of the affected speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 797–801, 109 S.Ct. 2746, 2757–59.

Accordingly, this regulation is subject to strict scrutiny and requires a governmental showing that the regulation in question is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that

end, utilizing the least restrictive means possible. *Carey*, 447 U.S. 455.

#### B. Possible State Interests

■ While Defendants' Cross Motion does not fully set out potential compelling state interests,[22] the above-discussed case law yields the following possible interests to be served by keeping confidential proceedings before the Campaign Spending Commission:

1. Confidentiality is thought to encourage the filing of complaints and the willing participation of relevant witnesses by providing protection against possible retaliation or recrimination. *See Landmark*, 435 . U.S. at 834–36, 98 S.Ct. at 1539–40; *Newton*, 723 F.Supp. at 856; *Doe*, 748 F.Supp. at 1522–23; *Kamasinski*, 797 F.Supp. at 1092–93; *Butterworth*, 110 S.Ct. at 1380.

2. At least until the time when the meritorious can be separated from the frivolous complaints, the confidentiality of the proceedings protects those complained of from the publication of unexamined and unwarranted complaints. *Id.*

3. To prevent a complainant from enhancing the veracity and credibility of his complaint by invoking the name of the Campaign Spending Commission. *Id.*

4. Confidence in the Legislature is maintained by avoiding premature announcement of groundless claims of campaign contribution violations since it can be assumed that some frivolous complaints will be made against Legislators who rarely can satisfy all contending constituents. *Id.*

5. Confidentiality is thought to promote the effectiveness of an investigation. *Id.*

While the Court recognizes the importance of these interests, it is not convinced that

---

**22.** Defendants' March 12, 1993, reply memorandum sets forth the following potential compelling state interest: "§ 11–216(d) is backed by compelling justifications in light of the First Amendment interests it *protects*, namely those of participants in the political process who have the substantive *right* to make contributions, in some contexts

even anonymously, without the threat of protracted state proceedings which could "chill" First Amendment activity." Defendants' Reply Memorandum In Support Of Cross–Motion For Judgment On The Pleadings, Or, In The Alternative, Summary Judgment.

these interests are sufficiently compelling to justify the restriction imposed by HRS § 11–216(d) on protected First Amendment speech. Nor is the Court convinced that HRS § 11–216(d) is narrowly drawn to achieve its ends, utilizing the least restrictive means possible.

### 1. Chilling First Amendment activity— campaign contributions

The Court finds overstated Defendants' claim that speech concerning the fact of the filing of a complaint, in violation of HRS § 11–216(d), will have a chilling effect on third parties who wish to make campaign contributions.[23] Defendants themselves state that HRS § 11–216(d) could not restrict Plaintiff Lind from "complaining generally (and publishing) his opinion that UHPA had violated the campaign spending laws." Def. Cross–Motions at 5, filed February 25, 1993. Moreover, Defendants state, HRS § 11–216(d) in no way "prohibits Mr. Lind from filing a complaint with the Commission, and *also* complaining generally (and publishing) his opinion that UHPA had violated the campaign spending laws." *Id.* By Defendants own admission, the most HRS § 11–216(d) does is to restrict Plaintiff from stating or publishing the fact that a complaint has been filed with the Campaign Spending Commission until a probable cause determination is made by the Commission and, if no probable cause is found, to keep confidential the entire record of the proceedings at the option of the person complained of. Accordingly, its chilling effect occurs only when third-party contributors are dissuaded from making campaign contributions, not as a result of allega-

tions of impropriety, but as a result of the statement, in addition to an allegation of impropriety, that a formal complaint has been filed.[24] Indeed, the greatest chilling of campaign contributions would likely occur as a result of the mere existence of a statute which imposes rules governing such contributions. The Court does not find Defendants' arguments compelling.

### 2. The Grand Jury Analogy

The above-listed possible state interests, with the exceptions of confidence in the Legislature and reputational interests, are most analogous to state interests set forth in the grand jury setting.[25] The main thrust of these interests is to promote the effectiveness of investigations.

In the context of campaign spending commission complaints, however, these interests lose much of their force. The grand jury process promotes effective investigations by maintaining confidentiality not only of the fact of the proceedings, but also by ensuring that the person being investigated is unaware of an ongoing investigation. In the campaign spending commission context, however, HRS § 11–216(d) makes clear that the person complained of would be aware of an investigation[26] from the start. As a result, the grand jury concerns regarding undue influence, retribution, and inducement are simply inapplicable to the campaign spending commission context. In terms of expediting investigations, the Court is simply not convinced that speech about the existence of a campaign spending commission complaint

---

**23.** Defendants' position, in effect, asks that this Court uphold HRS § 11–216(d)'s restriction on First Amendment protected speech in order to guard against the potential chilling effect that a removal of HRS § 11–216(d)'s restriction may have on another form of First Amendment protected speech—campaign contributions.

**24.** Even if some chilling effect on third-party contributions were to occur as a result of violations of HRS § 11–216(d), a "no probable cause" determination by the commission likely provides a better means for exculpating non-guilty parties than any other existing legal remedy.

**25.** I.e., that (1) prospective witnesses would be hesitant to come forward voluntarily, knowing

that those against whom they testify would be aware of that testimony; (2) witnesses would be less likely to testify fully and frankly before the Commission, as they would be open to retribution as well as inducements; (3) the risk that those about to be investigated would flee or try to improperly influence the Commissioner. *See Butterworth*, 494 U.S. at 630, 110 S.Ct. at 1380.

**26.** HRS § 11–216(b) states: "The commission shall give notice of receipt of the complaint together with a copy of the complaint to the person cited and shall afford the person an opportunity to explain or otherwise respond to the complaint. The commission may also cause an investigation to be made of the complaint." *Id.*

will so hinder the process so as to be, in and of ·itself, a compelling state interest.

Likewise, the Court is unconvinced that the interests in maintaining confidence in the legislature, or the potential harm to reputational interests that may occur as a result of speaking to the fact that a complaint has been filed with the Campaign Spending Commission, rise to the level of compelling interests sufficient to justify HRS § 11–216(d)'s restriction on protected First Amendment speech.

Accordingly, for the above-stated reasons, this Court finds that there are no compelling state interests which would justify the restrictions on protected First Amendment free speech and free press that would result from application of HRS § 11–216(d).

### C. Construing Hawaii Revised Statutes, Section 11–216(d)

■■■ When construing a statute, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance is finished." *Estate of Cowart v. Nicklos Drilling Co.,* 112 S.Ct. 2589 (1992). *See also Norfolk & Western v. American Train Dispatchers,* 111 S.Ct. 1156, 1163 (1991).

HRS § 11–216(d), when read for its plain meaning, clearly applies to third parties and clearly applies even after a determination of no probable cause by the Commission. *See supra* p. 1 n. 1. Section 11–216(d) cannot, as Defendants assert, be plausibly read to require confidentiality from only the Commission staff. As written, Section 11–216(d) is plain and unambiguous.

### 1. HRS § 11–216(d) applies to 3rd Parties

Although HRS § 11–216(d) does not itself answer the question of who is subject to the

statute's confidentiality requirement, HRS § 11–228, the section covering violations of the entire subpart (§§ 11–191 through 11–229), states that "[a]ny person violating any provision of this subpart ... shall be guilty of a petty misdemeanor ... or ... a fine not exceeding $1,000." *Id.* When read for its plain meaning, the "any person" language of § 11–228 clearly would include commission staff, complainants, as well as third parties within the ambit of § 11–216(d)'s restriction. Defendants' claim that the statute can be read to apply only to the Commission staff requires an improper stretch in statutory construction.[27]

### 2. HRS § 11–216(d) applies AFTER a no probable cause determination

Section 11–216(d) likewise clearly requires that the fact of filing of the complaint be kept confidential even after a determination of no probable cause is made by the Commission. The statute requires that "all proceedings, *including the filing of the complaint,* investigation, and hearing" be kept confidential "[u]ntil a determination of probable cause is made by the commission." *Id.* (emphasis added). The statute further requires that "the entire record of the proceedings" be kept confidential after a determination of no probable cause is made. *Id.* When read for its plain meaning, it is clear that the language, "including the filing of the complaint," is to be included within the "entire record of the proceedings" which shall be kept confidential even after a determination of no probable cause is made. *Id.*

The legislative history of HRS § 11–216(d), attached as an exhibit to Plaintiff's Motion For Summary Judgment is unhelpful in this instance. At most, the legislative history appears to suggest some of the same state interests that exist in the grand jury setting, i.e., due process and facilitation of

---

27. Indeed, this case may not have arisen at all if, as Defendants assert should be the case, HRS § 11–216(d) were read to require confidentiality only on the part of the Commission staff. It was the Campaign Spending Commission itself which decided to treat UHPA's request for clarification

on HRS § 11–216(d)'s applicability to Plaintiff Lind as a complaint against Plaintiff for violation of HRS § 11–216(d). Plaintiff is a complainant and *not a Commission staff member.* Therefore, the Commission itself has applied HRS § 11–

investigations.[28]

### D. *Overbreadth*

 *Landmark* makes clear that as applied to third-parties, HRS § 11–216(d) would be unconstitutional. Since HRS § 11–216(d), when read for its plain meaning, applies to third parties, it is unconstitutionally overbroad.

Likewise, none of the cited cases, including *Kamasinski*, stand for the proposition that the fact of the filing of a complaint can be kept confidential *after* a determination by the commission. After a determination by the commission, the only possible remaining state interests served by requiring confidentiality of the fact of filing of the complaint are reputational. *See Butterworth*, 494 U.S. at 631–35, 110 S.Ct. at 1381–83. *Butterworth* makes clear that reputational interests alone are not compelling. *Id.* Since HRS § 11–216(d), by its terms, requires confidentiality, at the option of the person complained of, even after a showing of no probable cause, it is, again, unconstitutionally overbroad.

### 1. Substantial Overbreadth

As discussed, " 'substantial overbreadth' is a criterion the United States Supreme Court has invoked to avoid striking down a statute on its face because of the possibility that it might be applied in a constitutional manner." *See supra Joseph H. Munson Co.*, 467 U.S. at 964, 104 S.Ct. at 2581. The criterion of substantial overbreadth does not apply where there is no easily identifiable, constitutionally proscribable conduct to which the statute can be applied.[29] Where there is "easily identifiable, constitutionally proscribable conduct to

which the statute can be applied," the criterion of substantial overbreadth requires a litigant "to demonstrate that the statute 'as applied' to him is unconstitutional." *See supra Joseph H. Munson Co.*, 474 U.S. at 964, 104 S.Ct. at 2851.

HRS § 11–216(d) includes within its coverage at least three unconstitutional applications. One, as applied to Plaintiff, HRS § 11–216(d) does not serve narrowly tailored, compelling state interests. Two, on its face, HRS § 11–216(d) unconstitutionally requires confidentiality on the part of third parties. Three, on its face, HRS § 11–216(d) unconstitutionally requires confidentiality even after a determination of no probable cause is made by the Commission. HRS § 11–216(d) does not include within its coverage "easily identifiable, constitutionally proscribable conduct." For this reason, the doctrine of "substantial overbreadth" cannot be applied to avoid striking down HRS § 11–216(d).

Even if the Court was to find that HRS § 11–216(d) includes within its coverage "easily identifiable, constitutionally proscribable conduct," the criterion of "substantial overbreadth" only requires that Plaintiff demonstrate that as applied to him the statute is unconstitutional. *See supra Joseph H. Munson Co.*, 474 U.S. at 964, 104 S.Ct. at 2851. Because, in this case, the Court has already found that the statute does not serve narrowly tailored, compelling state interests, *see supra* text at p. 40, Plaintiff has "demonstrate[d] that the statute 'as applied' to him is unconstitutional."[30] *See supra Joseph H. Munson Co.*, 474 U.S. at 964, 104 S.Ct. at 2851. Thus, alternatively, even if the criteri-

---

216(d) to more than merely the Commission staff.

**28.** The House Standing Committee Report No. 176 noted the addition of a confidentiality requirement to what became HRS § 11–216(d), stating that "Witnesses and parties participating in Commission proceedings pursuant to this section may be placed under the same constraints as jurors who are deliberating cases in court. Thus, the Commission may admonish participants to maintain the confidentiality of the proceedings." Act 327, 1975 Session Laws.

**29.** The criterion of "substantial overbreadth" is appropriately applied in cases where "despite some possibly impermissible application, the 're-

mainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct....' " *See supra Joseph H. Munson Co.*, 467 U.S. at 964, 104 S.Ct. at 2851.

**30.** "[W]here the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an overbreadth attack." *Joseph H. Munson Co.*, 474 U.S. at 968, 104 S.Ct. at 2853 (citing *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217, 95 S.Ct. 2268, 2277 (1975)).

on of substantial overbreadth is applied to HRS § 11–216(d), since Plaintiff has demonstrated that as applied to him the statute in unconstitutional, HRS § 11–216(d) is "substantially overbroad."

HRS § 11–216(d) simply was not "drafted narrowly to reflect a close nexus between the means chosen by the legislature and the permissible ends of government." *See* TRIBE, *supra*, § 12–28 at 1025.[31] HRS § 11–216(d) is "substantially overbroad."

### 2. Narrowly Construing HRS § 11–216(d)

Unless there exists a satisfactory way of severing the law's constitutional from its unconstitutional applications so as to excise the latter clearly in a single step from the law's reach, the law must be declared unconstitutional. *See* TRIBE § 12–27; *Board of Airport Com'rs of Los Angeles*, 482 U.S. 569, 107 S.Ct. 2568.

HRS § 11–216(d) is unconstitutionally overbroad both in its application to third parties and its requirement of confidentiality after a determination of no probable cause by the Commission. In order to fashion a remedy to these two problems, more than a single, clear step would be required of this Court. Recognizing the problems inherent in rewriting a provision of the Hawaii State Legislature, even if this Court were to assume to find it within its grant of power to do so, this Court declines to do so. As the United States Supreme Court stated in *Board of Airport Com'rs of Los Angeles*, 482 U.S. at 575–76, 107 S.Ct. at 2573, "it is difficult to imagine that the resolution could be limited by anything less than a series of adjudications, and the chilling effect of the resolution on protected speech in the meantime would make such a case-by-case adjudication intolerable."

### E. *Certification To The State Supreme Court*

■ While the arguments are strong for state certification where a limiting usage would save the statute and the three *Pullman* abstention tests are met, in this case the three tests are not met.

First, the proper resolution of the state law question is not uncertain. When read for its plain meaning, HRS § 11–216(d) applies to third parties, and applies even after a no probable cause determination by the Commission.

Second, a definitive ruling on the state issue would not obviate the need for constitutional adjudication. Since, in this case, even in Defendants' proposed application of the statute as applied to Plaintiff, the Court is not convinced that HRS § 11–216(d) is backed by narrowly tailored, compelling state interests, a narrowing construction would be of no help.

Moreover, even assuming that constitutional applications to this statute can be imagined, a narrowing instruction, in this case, represents an unsatisfactory way of separating the law's constitutional from its unconstitutional applications. In fashioning a constitutional application for this provision, what

---

**31.** Defendants bring a Fed.R.Civ.P. 56(f) motion in order to present statistical compilations to show that HRS § 11–216(d) is not "substantially overbroad." Def. reply memorandum, filed March 12, 1993. Defendants seek to "submit additional evidence to show in which cases the provisions of HRS § 11–216(d) actually had any impact, and, therefore which evidence would rebut any conceivable basis for invalidating the statute on a claim of unconstitutional 'overbreadth.'" *Id.*

As discussed above, the doctrine of "substantial overbreadth" does not apply to HRS § 11–216(d), which contains within its coverage no easily identifiable, constitutionally proscribable activities. Moreover, since the Court has already determined that, as applied to Plaintiff, HRS § 11–216(d) is unconstitutional, HRS § 11– 216(d) has already been determined to be "substantially overbroad."

The Court fails to see how statistical compilations would aid in considering HRS § 11– 216(d)'s *potential chilling effect* on the protected First Amendment free speech and free press rights of third parties. At most, the compilations could serve to show how HRS § 11–216(d) has been applied, which this Court has already determined to be in violation of the United States Constitution. The factual information that Defendants are required to show is not how HRS 11–216(d) has been applied, but "a solidity of evidence" that the danger HRS 11–216(d) allegedly guards against "immediately imperil[s]." *See Landmark*, 435 U.S. at 845, 98 S.Ct. at 1544. Defendants' Rule 56(f) motion is accordingly denied.

**1338**

would be required, at least, is a complete revision of the statute.

Third, although legislation regarding campaign spending provisions constitutes a sensitive area of social policy upon which federal courts ought not to enter, in this case, no alternative to its adjudication is open. *See Burdick,* 847 F.2d 587. Therefore, this Court declines to certify HRS § 11–216(d) to the Hawaii Supreme Court.

### F. *Injunctive Relief*

The Ninth Circuit has held that to be entitled to injunctive relief, a plaintiff must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in their favor." *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir.1991); *Diamontiney v. Borg,* 918 F.2d 793, 795 (9th Cir.1990).

The standard for injunctive relief has clearly been met in this case. Plaintiff has established both, success on the merits, and the possibility of irreparable injury stemming from HRS § 11–216(d)'s unconstitutional restriction of First Amendment activities. Accordingly, this Court will grant Plaintiff's motion for permanent injunction of enforcement of HRS § 11–216(d).

### *CONCLUSION*

HRS § 11–216(d) fails for several reasons. First, as applied to Plaintiff, the state has failed to establish compelling state interests which are narrowly tailored to serve those ends, utilizing the least restrictive means possible. Second, HRS § 11–216 is unconstitutionally overbroad because, on its face, it applies to third parties. Finally, HRS § 11–216 is unconstitutionally overbroad because, on its face, it applies even after a determination of no probable cause has been made by the Commission. The Court further finds that HRS § 11–216(d) is neither subject to a narrowing construction nor appropriate for state supreme court certification. Accordingly, Plaintiff's motion for summary judgment is granted. Defendants' cross-motions for judgment on the pleadings, or, alternatively for summary judgment are denied.

The Court hereby declares HRS § 11–216(d) unconstitutional. Enforcement of this provision is permanently enjoined.

IT IS SO ORDERED.