**John DOE, Plaintiff,**

v.

**STATE OF FLORIDA JUDICIAL QUALIFICATIONS COMMISSION, Defendant.**

**No. 89–6362–CIV.**

United States District Court, S.D. Florida.

Sept. 28, 1990.

James K. Green, Green, Eisenberg & Cohen, West Palm Beach, Fla., for plaintiff.

George L. Waas, Asst. Atty. Gen., State of Fla., Tallahassee, Fla., for defendant.

## ORDER OF FINAL SUMMARY JUDGMENT

MARCUS, District Judge.

THIS CAUSE has come before the Court on the parties' cross-motions for summary judgment. At issue in the case is the constitutionality of Article V, Section 12 of the Florida Constitution in so far as it bars the disclosure of the fact that a complaint against a judge has been filed with the Florida Judicial Qualifications Commission (hereinafter "JQC").

The suit was triggered when, in May 1989, the Plaintiff, John Doe, a practicing Florida attorney, filed a complaint with the JQC against a county court judge who allegedly discriminated in open court against a person with AIDS. In response to Doe's complaint, the Defendant JQC notified Doe that "pursuant to the provisions of Article V, Section 12, Florida Constitution, the fact that a complaint against a judge had been filed with this Commission is confidential.... [Y]ou should abide by this constitutional mandate." Complaint at para. 6. This lawsuit ensued as a result of Plaintiff's claims that Florida's confidentiality rule violates the free speech clause of the First Amendment. Plaintiff seeks a determination that Article V, Section 12 of the Florida Constitution is unconstitutional on its face and as applied to this case; and that an injunction should issue enjoining the JQC from enforcing it. The JQC has argued that the rule does not violate the First Amendment as it represents a valid

time, place and manner regulation, and that the restriction placed on Plaintiff's freedom of expression is sufficiently justified by the State's interest in maintaining confidentiality regarding the filing of complaints against judges. Both sides have stipulated the basic facts in the lawsuit and agreed that the cause is ripe for disposition on motion for summary judgment.

## I.

The following facts have been stipulated by the parties:

1. Plaintiff, John Doe, is a resident of Broward County, Florida. He is also a licensed Florida attorney and consultant specializing in Acquired Immune Deficiency Syndrome (AIDS) issues. He is also a former chair of the AIDS subcommittee of the Florida Bar's Committee on Individual Rights and Responsibilities, and a member of the national American Civil Liberties Union's (ACLU) Task Force on AIDS. He has published a law review article on AIDS and has lectured extensively on AIDS law to members of the public and legal profession.

2. Defendant, Judicial Qualifications Commission of the State of Florida, is vested with jurisdiction to investigate and recommend to the Supreme Court of Florida the removal or reprimand of any justice or judge. It is responsible for the enforcement of Article V, Section 12(d) of the Florida Constitution.

3. Article V, Section 12(d) of the Florida Constitution provides that:

[A]ll proceedings by or before the commission shall be confidential; provided, however, upon a finding of probable cause *and* the filing by the commission with said clerk of such formal charges against a justice or judge such charges and all further proceedings before the commission shall be public. (emphasis added)

4. In May 1989, Plaintiff filed a complaint against a Florida judge for unlawfully discriminating in open court against a criminal defendant with AIDS. In support of his complaint, Plaintiff filed a transcript of that hearing wherein the judge, after learning that the criminal defendant had AIDS, stated:

I would like to know why this person is in this courtroom around all of these people? I have a notion to hold you [the criminal defendant with AIDS] in contempt. I want this person removed right now. [While defendant does not dispute accuracy of the transcript, it does dispute its materiality].

5. Defendant has a practice of advising complainants that "pursuant to the provisions of Article V, Section 12, Florida Constitution, the fact that a complaint against a judge had been filed with this Commission is confidential.... [Y]ou should abide by this constitutional mandate."

6. Sometime in July 1989, the judge in question resigned prior to the filing by the commission with its clerk of formal charges against the judge. Plaintiff never received notice of any disposition of his complaint.

7. Plaintiff desires to speak and publish articles about his complaint but believes he cannot do so out of fear of prosecution for violating Article V, Section 12, the text of which is attached hereto, and the admonishment referred to in paragraph 5 above.

8. As described above, the acts of defendant, including its agents and employees acting in their official capacities, were under color of state law.

9. The Judicial Qualifications Commission contends that confidentiality of JQC proceedings serves the following interests:

a. To prevent a complainant who might have self-serving motives from publicly discussing the fact of filing of a complaint that may prove to be unfounded until a preliminary investigation has been completed;

b. To minimize the risk of injury to the reputation of a judicial constitutional officer caused by any adverse publicity from unfounded complaints;

c. To maintain the public's confidence in its judicial officers by preventing the premature disclosure of the fact of filing of a complaint that may ultimately prove to be unfounded;

d. To protect the complainant and witnesses from possible pressure and recrimination;

e. To facilitate the investigation of a complaint;

f. To prevent the potential use of a constitutional agency to help injure the reputation of a judge;

g. To protect the constitutional right of privacy of a member of the Florida Bar who is also a constitutional officer—a judge;

h. To assure that the public policy behind the subject constitutional provision as adopted by the citizens of the State of Florida is protected consistent with the will of the people.

## II.

Under the scheme established by Section 12(d), a complainant is permanently barred from revealing the fact that a complaint has been filed until such time as the Commission may find probable cause and file formal charges with the Florida Supreme Court. Thus when the Commission does not find probable cause to file formal charges with the Supreme Court the complainant is forever barred from revealing the fact that a complaint has been filed. Likewise, where a judge resigns or retires prior to the filing of formal charges the complainant may not reveal the fact that a complaint has been filed. During July 1989, the judge involved in the complaint filed by Doe resigned from the bench, thereby depriving the JQC of jurisdiction and mooting out the proceeding. Accordingly, Plaintiff has refrained from speaking or publishing articles regarding his complaint due to fear of prosecution for violation of § 12(d).

The sole issue to be determined today is whether the First Amendment prohibits the JQC, insofar as it is charged with the responsibility of enforcing Article V, Section 12(d) of the Florida Constitution, from barring Doe from revealing the *fact* that he filed a complaint with the JQC. There is no dispute that Doe is free to discuss the underlying allegations comprising the nature of the complaint. Indeed, in the course of oral argument, counsel for the Defendant JQC conceded that Plaintiff re-

mained free to disclose all facts gathered by him alone and not as a result of his participation in proceedings before the JQC. The JQC also conceded that Plaintiff could even disclose his intention to file a complaint at a later time. Only the fact of filing a complaint is barred, and therefore our ruling is limited to that discrete issue.

The JQC presents two alternative bases for its claim that the confidentiality rule as applied does not violate the First Amendment: first, that the rule represents a valid time, place and manner regulation; and second, that the restriction on the Plaintiff's freedom of expression is sufficiently justified by the State's interest in maintaining confidentiality regarding the filing of complaints against judges. A close analysis of the JQC's claims leads us to conclude first that the confidentiality rule is not a valid time, place and manner restriction. Moreover, the governmental interests set forth as justifications for the rule as applied here are not sufficiently compelling to survive a First Amendment challenge.

Government regulation of speech on the basis of content is presumed to violate the First Amendment. *City of Renton v. Playtime Theatres Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). However, government regulation of the time, place or manner of protected speech is valid provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open alternative channels for communication of the information." *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). *See also Ward v. Rock Against Racism*, —— U.S. ——, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989), *rehearing den.*, —— U.S. ——, 110 S.Ct. 23, 106 L.Ed.2d 636; *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1975). In the instant case, the confidentiality rule as applied clearly does not satisfy two of the requisite elements for a valid time, place and manner restriction. First, the rule is not justified

without reference to the content of the speech which the government seeks to prohibit. Second, the rule plainly does not allow for alternative avenues of communication in situations where the JQC does not file a formal complaint with the Florida Supreme Court.

■ A common thread running through the time, place and manner restrictions is that each of the regulations were justified on the basis of secondary effects emanating from the proscribed speech rather than on the basis of the content of the speech standing alone. *See e.g. Renton,* 475 U.S. at 43–44, 106 S.Ct. at 926–27 (upholding zoning ordinance on adult movie theatres based on the finding that the ordinance was primarily concerned with the secondary effects of adult theatres on surrounding neighborhoods rather than the content of the movies themselves); *Ward,* 109 S.Ct. at 2750 (upholding regulations of concert performances in public park based on the determination that the regulations were concerned with controlling noise levels rather than restricting the content of concert performances); *Clark,* 468 U.S. at 288, 104 S.Ct. at 3065 (finding prohibition of protest camping on public lands to be constitutional where justified on the basis of aesthetic considerations rather than on the basis of content regulation). The law is clear, however, that where a rule or regulation is intended to restrain speech based on content, the restriction violates the First Amendment. As the Supreme Court observed in *Young,* 427 U.S. at 63–64, 96 S.Ct. at 2448–49;

> Nor may speech be curtailed because it invites dispute, creates dissatisfaction with conditions the way they are, or even stirs people to anger. The sovereign's agreement or disagreement with the content of what a speaker has to say may not affect the regulation of the time,

place or manner of presenting speech. (Footnote omitted)

Recently, in *Baugh v. Judicial Inquiry and Review Commission,* 907 F.2d 440 (4th Cir.1990), the Fourth Circuit considered a First Amendment challenge to a confidentiality rule similar to the one at issue today.[1] The state attempted to justify its confidentiality regulation by claiming that the regulation was an "effective method for identifying unfit or disabled judges and facilitating disciplinary action or their removal from the bench." *Id.* at 444. In expressly rejecting the notion that the Virginia confidentiality provision represents a valid time, place and manner restriction, the Fourth Circuit wrote that:

> Although the Commission argues that this justification is unrelated to the content of the speech, it is inescapable that the asserted justification for section 2.1–37.13 is very closely related to the content of the speech. The reason that it may be an effective method of motivating disabled or unfit judges to voluntarily resign from the bench is that by resigning, a judge may avoid the public criticism that might follow were it revealed that a complaint had been filed against him. It is the content of the speech that is critical to section 2.1–37.13 for it silences all speech related to the actual filing of a complaint with the Commission and thus is not a regulation that has only the "secondary" or incidental effect of restricting speech. The outright, direct ban on speech concerning this single topic can only be justified by the content of the speech.

*Id.* at 444, (citing *Doe v. Supreme Court of Florida,* 734 F.Supp. 981 (S.D.Fla.1990) (Florida Bar Rule prohibiting complainant from disclosing information regarding disciplinary proceedings is not justified on bases unrelated to the content of the

1. The provision at issue in *Baugh,* Section 2.1–37.13 of the Virginia Code provided that:
 All papers filed with and proceedings before the Commission, ... including the identification of the subject judge as well as all testimony and other evidence and any transcript thereof made by a reporter, shall be confidential and shall not be divulged, other than to the Commission, by any person who either

files a complaint with the Commission, or receives such complaint in an official capacity, or investigates such complaint by a member, employee or agent of the Commission, or participates in any recording or transcription thereof, except that the record of any proceeding filed with the Supreme Court shall lose its confidential character.

speech); *Providence Journal Co. v. Newton*, 723 F.Supp. 846, 854 (D.R.I.1989) (confidentiality provisions of Rhode Island's government ethics law prohibiting public discussion of existence and content of complaint filed against public official are "prototypical content-based regulations of protected speech").

In the instant case, the JQC has not presented any non-content related justifications for the confidentiality rule. Rather, each of the stated justifications for the rule—avoidance of the complaint mechanism being used as a sounding device for unfounded complaints; protection of the privacy of state judges; facilitation of investigations; and the state interest in upholding the reputations of and public confidence in individual judges as well as the judiciary as an institution—are all directly related to the content of the prohibited speech rather than any secondary effects emanating from the speech. Accordingly, the provision may not be justified simply as a content-neutral time, place and manner restriction.

Moreover, the confidentiality provision as applied to the facts of this case also fails to pass muster as a time, place and manner restriction since the Plaintiff is left with no alternative means of communicating the fact that he has filed a complaint against a judge with the JQC. In instances such as these where formal charges will not be filed with the Florida Supreme Court, the complainant is forever barred from comment on the fact that a complaint has been filed. Therefore, the rule is manifestly not justifiable as a mere time, place and manner restriction. *See Doe, supra* (confidentiality provision concerning complaints against attorneys made to the Florida Bar may not be classified as a valid time, place and manner restriction where the provision acts as an absolute bar to speech or publication regarding the complaint). Moreover, where a restriction on speech is imposed on the basis of the content of the speech itself, the restriction is subject to the "most exacting scrutiny." *Texas v. Johnson*, —— U.S. ——, 109 S.Ct. 2533, 2543, 105 L.Ed.2d 342 (1989) (quoting *Boos v. Barry*, 485 U.S. 312, 321, 108 S.Ct. 1157, 1163–64, 99 L.Ed.2d 333 (1988)). A con-

tent-based restriction on protected speech must be "necessary to serve a compelling state interest" and must be "narrowly drawn to achieve that end." *Boos*, 485 U.S. at 321, 108 S.Ct. at 1164 (quoting *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). And the burden rests squarely on the government to show the existence of such compelling interests. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 786, 98 S.Ct. 1407, 1421, 55 L.Ed.2d 707 (1978).

■ Where a restriction on speech implicates the free discussion of governmental affairs, the courts have been particularly vigilant in enforcing First Amendment rights. As the Supreme Court observed in *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966):

> Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.

*See also Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 838, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1 (1978) (finding that publication of information regarding proceedings before judicial disciplinary board "lies near the core of the First Amendment"); *Butterworth v. Smith*, 494 U.S. ——, 110 S.Ct. 1376, 1381, 108 L.Ed.2d 572 (1990) ("the publication of information relating to alleged governmental misconduct ... has traditionally been recognized as lying at the core of the First Amendment."). The High Court has further recognized that:

> a principle "function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."

*Johnson*, 109 S.Ct. at 2541 (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949)). In this case, the Plaintiff seeks to publicly criticize

the JQC for failing to disclose the disposition of the complaint and for the nature of the disposition itself.

The JQC's stated justifications for Section 12(d) must be evaluated against this backdrop of strict analysis. The JQC has set forth the following governmental interests in support of the confidentiality provision:

a. To prevent a complainant who might have self-serving motives from publicly discussing the fact of filing of a complaint that may prove to be unfounded until a preliminary investigation has been completed;

b. To minimize the risk of injury to the reputation of a judicial constitutional officer caused by any adverse publicity from unfounded complaints;

c. To maintain the public's confidence in its judicial officers by preventing the premature disclosure of the fact of filing of a complaint that may ultimately prove to be unfounded;

d. To protect the complainant and witnesses from possible pressure and recrimination;

e. To facilitate the investigation of a complaint;

f. To prevent the potential use of a constitutional agency to help injure the reputation of a judge;

g. To protect the constitutional right of privacy of a member of the Florida Bar who is also a constitutional officer—a judge; and

h. To assure that the public policy behind the subject constitutional provision as adopted by the citizens of the State of Florida is protected consistent with the will of the people.

The interests asserted by the JQC may be consolidated into four principal interests:

1) Prevention of damage to the reputation of individual judges as well as the judiciary as an entity resulting from the filing of complaints which ultimately prove to be unfounded and prevention of concomitant loss of confidence in the judicial system resulting from the filing of unmeritorious complaints;

2) Avoidance of the possibility that a complainant might use publication of the fact that a complaint has been filed as a "bully pulpit" for the dissemination of a baseless complaint;

3) Facilitation of effective investigations by the Judicial Qualifications Commission;

4) Protection of judge's constitutional right of privacy.

Each one of these justifications will be analyzed below.

A. *Reputational Considerations*

While Florida surely has a valid interest in maintaining the reputation of its judges and the integrity of its judiciary, this interest is plainly insufficient under controlling precedent to sustain this restriction on free speech. In *Landmark*, the Supreme Court squarely addressed the issue of whether regulations mandating confidentiality as to information concerning judicial disciplinary proceedings may be justified as a means of protecting the reputation of judges. *Landmark* arose out of a challenge to a Virginia statute which subjected persons to criminal sanctions for disclosing information regarding judicial misconduct proceedings. Virginia defended the constitutionality of the statute, much as the JQC argues today, by maintaining that the statute was necessary to protect the reputations of Virginia's judges as well as to maintain the institutional reputation of Virginia's courts. In finding these interests insufficient to justify the infringement on First Amendment speech, the Supreme Court found that:

neither the Commonwealth's interest in protecting the reputation of its judges, nor its interest in maintaining the institutional integrity of its courts is sufficient to justify the subsequent punishment of speech at issue here, even on the assumption that criminal sanctions do in fact enhance the guarantee of confidentiality. Admittedly, the Commonwealth has an interest in protecting the good repute of its judges, like that of all other public officials. Our prior cases have firmly established, however, that injury to official reputation is an insufficient reason "for repressing speech that would

otherwise be free." *New York Times v. Sullivan*, 376 U.S. [254] at 272–273, 84 S.Ct. [710] at 722 [11 L.Ed.2d 686 (1964)]. See also *Garrison v. Louisiana*, 379 U.S. 64, 67, 85 S.Ct. 209, 212, 13 L.Ed.2d 125 (1964). The remaining interest sought to be protected, the institutional reputation of the courts, is entitled to no greater weight in the constitutional scales. *See New York Times v. Sullivan, supra.*

*Landmark*, 435 U.S. at 841–42, 98 S.Ct. at 1542–43. *See also Butterworth*, 110 S.Ct. at 1382 ("reputational interests alone cannot justify the proscription of truthful speech.")

The Supreme Court went on to reject the notion that the Virginia confidentiality provision could be justified as an attempt to promote confidence in Virginia's judicial system. Citing *Bridges v. California*, 314 U.S. 252, 270–271, 62 S.Ct. 190, 197–98, 86 L.Ed. 192 (1941), the Supreme Court observed that:

> "The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion.... [A]n enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would engender respect."

*Landmark*, 435 U.S. at 842, 98 S.Ct. at 1543. The Supreme Court's analysis of the reputational justification in *Landmark* is equally applicable here. The JQC's asserted interests in protecting the reputation of individual judges as well as the judiciary as an institution is insufficient to support the restriction on free speech. Moreover, the JQC's contention that the confidentiality rule promotes public confidence in the judiciary is unconvincing. The JQC's asserted interest in preserving the reputation of judges from the making of unfounded complaints is largely undermined by its concession that the complainant remains free to disclose all the underlying facts supporting the claim, and even the stated intention to file a complaint with the JQC. Indeed, the JQC conceded that a complainant could freely disclose the underlying facts supporting the complaint even if called upon to testify before the JQC. Only the fact of filing a complaint is barred. Imposing a forced silence on the fact of filing complaints with the JQC is more likely to engender resentment and suspicion than to promote confidence or integrity. Finally, even if the reputational interests cited by the Defendant were sufficient to justify some restrictions on First Amendment rights, § 12(d) is plainly an overbroad means of perfecting those interests. In the first place, the prohibition is not limited to the revelation of false complaints against members of the judiciary; rather, the provision applies to all complaints, even those that prove to be meritorious. Second, § 12(d) forever bars the publication of the fact that a complaint has been filed even in cases where a judge retires or resigns prior to the filing of formal charges with the Supreme Court. The fact that the publication of a meritorious claim against a judge may erode public confidence in the judiciary is not sufficient basis to absolutely prohibit speech otherwise free. *See Landmark*, 435 U.S. at 841–42, 98 S.Ct. at 1542–43.

### B. *Bully Pulpit*

The JQC also maintains that by barring disclosure of the fact of filing a complaint, the rule avoids the possibility that a complainant might wrongfully use the fact of filing with the JQC as a means to amplify and legitimate the claim. This justification is not sufficiently persuasive to prohibit the exercise of free speech.

The assertion of this interest overstates the degree to which publication of the fact that a complaint has been filed will lead the people to believe that the complaint is likely to be true. Our people are surely familiar with the fact that frivolous complaints are frequently filed both in courts and before various administrative bodies. The notion that the people are somehow unable to determine for themselves what to believe or not believe about issues concerning the body politic is belied by the history of a free people involved in self governance. The danger that publication of filing a complaint will necessarily result in overvalua-

tion of its merits is largely illusory. This seems especially so where the Defendant JQC has conceded that the complainant may freely disclose the underlying nature of the complaint. And in this case, the Plaintiff's complaint is based upon a transcript of what happened in open court, not information gleaned from a JQC proceeding or hearing.

Additionally, the confidentiality provision is an overbroad means of accomplishing the Defendant's stated justification of avoiding what it has called "the bully pulpit effect." As noted already, the provision at issue applies not only to false complaints, but to the truth as well. Here Florida seeks to proscribe or punish "the publication of information relating to government misconduct—speech which has traditionally been recognized as lying at the core of the First Amendment." *Butterworth v. Smith*, 110 S.Ct. at 1381; *Landmark*, 435 U.S. at 838, 98 S.Ct. at 1541. To justify such a prohibition, the JQC must evidence a "state interest of the highest order." *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979). We do not think it has met so exacting a standard.

## C. *Facilitation of Investigations*

While the JQC surely has an interest in facilitating the effective investigation of complaints, the JQC has failed to cite any evidence that the confidentiality rule furthers such an interest. The JQC does no more than merely assert the fact that secrecy with respect to the act of filing a complaint facilitates effective investigations. To the extent that the JQC asserts that potential complainants will be discouraged from filing complaints in the absence of a confidentiality rule, § 12(d) as applied to this case does not further the filing of complaints. It is important to note that Plaintiff Doe only wishes to publicize the fact that he has filed a complaint with the JQC. In the absence of the confidentiality provision, a complainant remains equally free not to reveal the fact that a complaint has been filed. *See Butterworth* 110 S.Ct. at 1382 ("the concern that some witnesses will be deterred from presenting testimony due to fears of retaliation is … not ad-

vanced by this prohibition; any witness is free *not* to divulge his own testimony …").

Moreover, we do not see how witnesses will be discouraged from testifying merely by prohibiting the disclosure that a complaint has been filed with the JQC. To the contrary, there is little reason to believe that an aggrieved complainant will be discouraged from filing a meritorious complaint with the JQC just because he may have the power to disclose publicly the fact of filing. In fact, the publication of a complaint may well have the effect of furthering the investigation by the JQC by creating awareness of the complaint on the part of third-party witnesses who may then come forward and testify before the JQC. In short, in the absence of evidence put forth by the JQC as to the means by which the confidentiality provision promotes the effective determination of complaints, we are unprepared to find that this interest is sufficiently compelling to overcome the infringement of basic First Amendment rights created by the provision. We emphasize that Doe does not challenge that part of the confidentiality provision which prohibits publication of events which take place during JQC proceedings.

## D. *Protection of Privacy Interests*

The JQC also has posited that the confidentiality rule is justified by a governmental interest in protecting "the constitutional right of privacy of a member of The Florida Bar who is also a constitutional officer—a judge." Defendant's Memorandum of Law, at 4. We are not persuaded by the Defendants' assertion of an interest in protecting judges' constitutional right to privacy.

> The Supreme Court has observed that: The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

*Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) (foot-

notes omitted). In the instant case, the Plaintiff seeks to reveal the fact that a complaint has been filed regarding an action taken by a judge in open court. We fail to see any means by which a revelation of a complaint concerning a public act taken by a sitting judge in open court can be construed as constituting disclosure of a personal matter in contravention of a protectable privacy interest. Moreover, the disclosure of the fact that a complaint has been filed manifestly has no implications on the judge's interest in independently making important decisions. Accordingly, we can find no privacy interests which are even colorably implicated here by disclosure that a complaint has been filed.

In maintaining that the confidentiality provision is justified by a state interest in protecting the privacy of judges against whom complaints have been filed, the Defendant cites *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In *Rhinehart*, the Supreme Court upheld the constitutionality of a protective order which prohibited the defendant in a libel action from revealing information gathered through discovery where the protective order does not prohibit the dissemination of facts gained from sources other than discovery. The instant case may be easily distinguished from *Rhinehart*. In this case, the Plaintiff seeks to reveal the fact that he has filed a complaint with the JQC. Notably, this information is known to the Plaintiff outside of any participation in a judicial proceeding. The basis for the complaint is information derived in open court, not in the course of the JQC disciplinary process. Thus, this case falls within the principle that where a person "lawfully obtains truthful information about a matter of public significance ... state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publishing Co.*, 443 U.S. at 103, 99 S.Ct. at 2671. *See also Butterworth*, 110 S.Ct. at 1381.

In sum, we find that the JQC has failed to set forth any compelling interests alone or in concert sufficient to justify the application of § 12(d) to prohibit the truthful publication of the simple fact that a complaint has been filed by Plaintiff John Doe with the JQC. Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is GRANTED. Insofar as Article V, Section 12(d) of the Florida Constitution prohibits complainants from revealing simply the *fact* that a complaint has been filed with the Judicial Qualification Commission, it is hereby declared unconstitutional as applied to this Plaintiff. It is further

ORDERED AND ADJUDGED that the JQC is enjoined from enforcing the confidential provision of Article V, Section 12(d), insofar as it prohibits the complainant, John Doe, from disclosing the fact that a complaint has been filed with the JQC.

DONE AND ORDERED.