## APPENDIX
### ESTIMATING PRESENT VALUE OF LOST EARNINGS

| Year | LOST EARNINGS Salary | Pension | Total | OFFSETS TO EARNINGS Salary | Pension | Total | Annual Loss | Discount Factor | Present Value |
|---|---|---|---|---|---|---|---|---|---|
| 1992 | $72,661 | | 72,661 | 27,974 | 30,602 | 58,576 | 14,085 | 1.04893 | 14,774 |
| 1993 | 78,870 | | 78,870 | 30,633 | 31,877 | 62,510 | 16,360 | 1.00000 | 16,360 |
| 1994 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .95238 | 1,433 |
| 1995 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .90703 | 1,365 |
| 1996 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .86383 | 1,300 |
| 1997 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .82270 | 1,238 |
| 1998 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .78353 | 1,179 |
| 1999 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .74621 | 1,123 |
| 2000 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .71068 | 1,070 |
| 2001 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .67682 | 1,019 |
| 2002 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .64461 | 970 |
| 2003 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .61391 | 924 |
| 2004 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .58469 | 880 |
| 2005 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .55684 | 838 |
| 2006 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .53032 | 798 |
| 2007 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .50507 | 760 |
| 2008 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .48102 | 724 |
| 2009 | | 33,382 | 33,382 | | 31,877 | 31,877 | 1,505 | .45811 | 689 |
| 2010 | | 17,359 | 17,359 | | 15,939 | 15,939 | 1,420 | .44424 | 631 |

TOTAL PRESENT VALUE OF LOST EARNINGS   $48,075

Theodore KAMASINSKI

v.

JUDICIAL REVIEW COUNCIL, STATE OF CONNECTICUT; and John D. La-Belle, S. William Bromson, Ethel S. Sorokin, Eugene C. Baten, Hon. G. Sarsfield Ford, Hon. Howard J. Moraghan, Hon. James M. Higgins, Dr. John Donnelly, Michael J. Daly, Rebecca S. Breed, Richard C. Lee, Daniel Mahaney, members.

Civ. No. 2:91–127 (JAC).

United States District Court, D. Connecticut.

Jan. 26, 1994.

Theodore Kamasinski, pro se.

Henry S. Cohn, John R. Whelan, Asst. Atty. Gen., State of Conn. Hartford, CT, for the defendants.

### ENDORSEMENT RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

JOSÉ A. CABRANES, Chief Judge.

The plaintiff in this action challenges on First Amendment grounds certain confidentiality requirements of Conn.Gen.Stat. § 51–51*l*, which governs the investigation by the Judicial Review Council of the State of Connecticut ("JRC") of alleged misconduct by Connecticut state court judges. Pending be-

fore the court is the plaintiff's Motion for Reconsideration (filed Oct. 18, 1993).

### DISCUSSION

On March 31, 1992, this court granted in part and denied in part the defendants' motion to dismiss, holding that Section 51–51*l* violated the First Amendment to the United States Constitution.[1] In response to that holding, the Connecticut General Assembly amended Section 51–51*l*.[2]

On September 30, 1993, this court granted the defendants' second motion to dismiss, holding that the plaintiff's claims were moot inasmuch as he no longer had a complaint pending before the JRC.[3] However, on October 15, 1993, the plaintiff filed a new complaint with the JRC.[4] The plaintiff now requests that the court reconsider its September 30, 1993 ruling in light of this change in the factual circumstances surrounding his case.

The defendants, on the other hand, argue that the plaintiff's new complaint before the JRC does not warrant reversal of the court's September 30, 1993 ruling. The court agrees.

The defendants make several arguments in opposition to the plaintiff's motion for reconsideration, claiming first that it is untimely. The court, however, declines to deny the plaintiff's motion in such summary fashion. The defendants further argue that the plaintiff's filing of a complaint with the JRC only two weeks after this court dismissed his case

---

**1.** *See Kamasinski v. Judicial Review Council,* 797 F.Supp. 1083 (D.Conn.1992) (*"Kamasinski I "*). When the plaintiff filed his complaint on February 8, 1991, Section 51–51*l* read, in relevant part, as follows:

Any investigation to determine whether or not there is probable cause that judicial conduct under section 51–51i has occurred shall be confidential and any individual called by the commission for the purpose of providing information shall not disclose his knowledge of such investigation to a third party unless the respondent requests that such investigation and disclosure be open.

**2.** As amended, the relevant portion of the statute now reads:

Any investigation to determine whether or not there is probable cause that judicial conduct under section 51–51i has occurred shall be

confidential and any individual called by the council for the purpose of providing information shall not disclose his knowledge of such investigation to a third party prior to the decision of the council on whether probable cause exists, unless the respondent requests that such investigation and disclosure be open, provided information known or obtained independently of any such investigation shall not be confidential.

**3.** *See Kamasinski v. Judicial Review Council, et al.,* Civil Action No. 2:91–127 (JAC) (D.Conn. Sept. 30, 1993).

**4.** *See* Plaintiff's Declaration In Support of His Motion for Reconsideration (filed Oct. 18, 1993) (doc. # 69), Ex. 1. The plaintiff also declares that, as of October 13, 1993, he intended to filed another misconduct complaint against a Connecticut Superior Court Judge.

as moot represents no more than a disingenuous attempt to continue this litigation. Whatever the plaintiff's intentions may be, the court similarly declines to deny his motion on this summary ground.

The defendants also claim that the plaintiff's new complaint before the JRC does not place him in harm's way, and that, as a result, his case is still moot. This claim may indeed have some merit. The plaintiff has not articulated how, under the particular circumstances presented here, the confidentiality provisions, as amended, specifically hinder the exercise of his First Amendment rights. Indeed, the plaintiff explicitly admits that his pending JRC complaint concerns "widely publicized" allegations. *See* Plaintiff's Memorandum in Support of Motion for Reconsideration (filed Oct. 18, 1993) (doc. # 68) ("Plaintiff's Memorandum"), at 6. It is therefore unclear, on this record, whether "the threat of punishment is sufficiently real to make this case justiciable." *See Kamasinski I*, 797 F.Supp. at 1088. In any event, the court now determines that the plaintiff's case should be dismissed on its merits.

In *Kamasinski I*, this court first noted that Section 51–51*l* made confidential only those JRC proceedings held before a determination of whether probable cause exists. 797 F.Supp. at 1090. The court then held that the statute was unconstitutional to the extent that it prohibited the disclosure of the *contents* or *substance* of an individual's own complaint or testimony before the JRC. *Id.* at 1094. The statute passed constitutional muster, however, insofar as it prohibited the disclosure of the *fact* that an investigation is pending before the JRC or of the knowledge one has acquired by virtue of interacting with the JRC in an investigation, provided that the prohibition ends once the JRC has determined whether probable cause exists. *Id.* at 1094, 1096, 1097. As noted above, the Connecticut General Assembly then amended Section 51–51*l* to conform with the holding of *Kamasinski I*.

The plaintiff, however, claims that the Connecticut General Assembly has failed to cure the constitutional defects of Section 51–51*l*. Specifically, the plaintiff maintains that the statute continues to offend the First Amendment because its prohibition on disclosure remains in effect until the JRC's decision on whether probable cause exists, and because the probable cause standard used by the JRC to distinguish between frivolous and meritorious claims of judicial misconduct is "undefined," "inadequate," and "unreasonable." *See* Plaintiff's Memorandum at 5.

It should be noted, however, that the statute no longer prohibits disclosure—at any time—of any "information known or obtained independently of any [JRC] investigation...."[5] The plaintiff's challenge must therefore be directed solely at the statute's prohibition against disclosing the fact that a JRC investigation is pending or the knowledge acquired by virtue of interacting with the JRC in such an investigation or proceeding. Moreover, it bears repeating that this prohibition lasts only until a finding of probable cause has been made.[6]

In *Kamasinski I*, however, the court concluded that the state's interest in prohibiting such disclosure, at least until a determination on probable cause, "is sufficiently compelling to survive the strictest First Amendment scrutiny." *See* 797 F.Supp. at 1091–94 (*citing Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 848, 98 S.Ct. 1535, 1546, 56 L.Ed.2d 1 (1978) (Stewart, J., concurring)). The plaintiff has provided no authority whatsoever—and the court is unable to find any authority—which directly supports the proposition that the narrowly tailored prohibition of Section 51–51*l*, as amended, violates the First Amendment.

The plaintiff has invoked two recent cases to support his position: *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991); and *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). Neither case is applicable.

In *Doehr*, the Supreme Court held that a Connecticut statute authorizing prejudgment attachment of real estate merely upon a showing of probable cause that judgment will

---

**5.** *See* note 2, *supra*.

**6.** *See* note 2, *supra*.

enter in favor of the plaintiff, without prior notice or a hearing and without requiring a showing of exigent circumstances, did not satisfy the Due Process Clause of the Fourteenth Amendment. The plaintiff's analogy, while creative, is hardly persuasive.

In the context of prejudgment remedies, which closely resembles the province of procedural due process,[7]

> the relevant inquiry requires, as in *Mathews* [*v. Eldridge,* 424 U.S. 319[, 96 S.Ct. 893, 47 L.Ed.2d 18] (1976) ], first, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of an erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews,* principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

*Doehr,* 501 U.S. at ——, 111 S.Ct. at 2112. The Court first determined that the property interests affected by prejudgment attachment were significant. The Court then found that the risk of an erroneous deprivation was substantial—*i.e.,* that there was simply too great a likelihood that the prejudgment attachment, though only temporary, could be, in the final analysis, unjustified. On this score, the Court noted that, "[b]y definition, attachment statutes premise a deprivation of property on one ultimate factual contingency—the award of damages to the plaintiff which the defendant may not be able to satisfy." *Id.* 501 U.S. at ——, 111 S.Ct. at 2113. Without a hearing to determine the plaintiff's likelihood of success, the statute presented too grave a potential of an unwarranted attachment. *Id.* 501 U.S. at ——, 111 S.Ct. at 2114–15.

Finally, the Court in *Doehr* concluded that the plaintiff's interest in obtaining an *ex parte* prejudgment attachment was minimal.

Indeed, the plaintiff's only interest in attaching the defendant's property "was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action." *Id.* 501 U.S. at ——, 111 S.Ct. at 2115. Again, without a showing of exigent circumstances or a predeprivation hearing, this interest was not sufficient to justify attachment. *Id.* Accordingly, the Court found the Connecticut statute unconstitutional.

The question presented here, however, must be clearly distinguished from the issue raised in *Doehr.* In the context of the First Amendment, the specific inquiry is whether the prohibition on speech is "necessary to serve a compelling state interest and ... narrowly drawn to achieve that end." *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988); *Kamasinski I,* 797 F.Supp. at 1090.

In *Kamasinski I,* the court identified a host of state interests served by the confidentiality provisions of Section 51–51*l,* which are hardly limited to the protection of judges from frivolous complaints—as the plaintiff appears to suggest. Indeed, the court indicated quite the opposite when it stated that confidentiality actually "encourages complaints, assistance in investigating complaints, and complete and truthful testimony." 797 F.Supp. at 1093. The court also commented on the desirability of "encourag[ing] infirm or incompetent judges to retire before the need for a hearing," noting that "if JRC proceedings were open before a finding of probable cause, judges of marginal suitability would be more likely to remain on the bench." *Id.* (*citing Landmark,* 435 U.S. at 836, 98 S.Ct. at 1540). Taken together, these considerations illustrate a concern over judges' "continuing suitability for the bench and with the independence of the judiciary as an institution." *Id.*

The court also articulated precisely how the statute had to be narrowly tailored in order to conform with the requirements of the First Amendment. As noted above, the statute was amended in response to the

---

**7.** *See Doehr,* 501 U.S. at ——, 112 S.Ct. at 2112 (noting that while prejudgment remedy statutes ordinarily apply to disputes between private parties rather than between an individual and the government, such enactments undoubtedly involve state action substantial enough to implicate the Due Process Clause).

court's holding so that its limitations on speech were scaled back in scope and duration.

In this light, the plaintiff's effort to analogize his claim to the *Doehr* case—thereby suggesting that he is somehow being erroneously deprived of his free speech rights by an inadequate probable cause standard—neglects two salient distinctions. First, unlike *Doehr*—where the Court noted that a prejudgment remedy is ultimately justified only if the plaintiff prevails and the defendant is unable to pay an award of money damages— at least some limits on speech in the context of JRC investigations are justified *regardless* of whether probable cause does in fact exist. Either way, there is a compelling state interest in keeping preliminary investigations and proceedings confidential.

Under the particular circumstances presented here, where the plaintiff is merely alleging that the JRC probable cause standard is ill-defined and inadequate, and where the compelling state interests served by confidentiality do not necessarily hinge upon the particular merits or outcome of any probable cause determination, the court finds that there is not a sufficient connection between the plaintiff's claim and any interests protected by the First Amendment. In other words, the precise contours of the JRC probable cause standard—whatever they may be—do not, under the circumstances presented here, implicate the First Amendment.

Second, unlike *Doehr*—where prejudgment attachments were awarded in sweeping fashion without notice, a hearing, or a showing of exigent circumstances—the limitations on speech imposed by Section 51–51*l* have been narrowly tailored so as to minimize their adverse effect on a JRC complainant's free exercise of speech. Again, the parameters of the JRC probable cause standard are not material to the conclusion that the statute's prohibition on speech is sufficiently limited in both scope and duration to withstand constitutional attack.

The plaintiff also relies on *Gentile, supra,* where the Supreme Court struck a Nevada Supreme Court rule forbidding a lawyer from making extrajudicial statements to the press which he or she knows (or reasonably should know) would have a "substantial likelihood of materially prejudicing" adjudicative proceedings. The Court, however, did not overturn the statute because of its prohibition on speech. Rather, the statute was unconstitutional because the safe harbor provision—which provided that a lawyer "may state without elaboration ... the general nature of the ... defense"—did not adequately notify the attorney that he would be disciplined for giving a press conference. *See* —— U.S. at ——, 111 S.Ct. at 2731. Put simply, the Court found the rule at issue there overly vague inasmuch as it misled the attorney into thinking his conduct was not prohibited.

Here, by contrast, the line between prohibited and unprohibited speech is clear. A complainant or witness before the JRC is free to publish at any time any information obtained independently from an JRC investigation or proceeding. He is not free to publish the fact that an investigation is pending or any knowledge acquired by participation in or observation of a JRC proceeding or investigation, until after the JRC determines whether probable cause exists.

Accordingly, the court concludes that the Connecticut General Assembly has in fact cured the constitutional deficiencies of Section 51–51*l* identified by this court in *Kamasinski I.* In sum, the court finds that the statute's prohibition on speech is now sufficiently narrowly tailored—in both duration and scope—to survive the plaintiff's constitutional challenge.

### CONCLUSION

Based on the record, the plaintiff's "Motion for Reconsideration and Amendment Pursuant to Rule 59(e) and, or Alternatively, Rule 60(b)(6)" (filed Oct. 18, 1993) (doc. # 67) is hereby GRANTED. Upon reconsideration, the court, for the reasons stated above, hereby adheres its September 30, 1993 Ruling, which GRANTED the defendants' second motion to dismiss.

However, whereas the September 30, 1993 Ruling dismissed the plaintiff's complaint without prejudice, this action is now hereby DISMISSED on the merits, with prejudice

and without costs to any party. The Clerk shall CLOSE this case.

It is so ordered.