Theodore **KAMASINSKI**, on behalf of Himself and Others, Plaintiff–Appellant,

v.

**JUDICIAL REVIEW COUNCIL**, State of Connecticut; John D. Labelle, Executive Director; William S. Bromson, Chairman; Ethel S. Sorokin, Member; Eugene C. Baten, Member; Sarfield G. Ford, Hon., Member; Howard J. Mora-

ghan, Hon., Member; James M. Higgins, Hon., Member; John Donnelly, Dr., Member; Michael J. Daly, Member; Rebecca S. Breed, Member; Richard C. Lee, Member; Daniel J. Mahaney, Member, Defendants–Appellees.

No. 420, Docket 94–7276.

United States Court of Appeals, Second Circuit.

Submitted Sept. 22, 1994.

Decided Dec. 29, 1994.

Theodore Kamasinski, pro se.

Carolyn K. Querijero, Asst. Atty. Gen., Hartford, CT (Richard Blumenthal, Atty. Gen., Hartford, CT, of counsel), for defendants-appellees.

Before: VAN GRAAFEILAND, MINER, and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant Theodore Kamasinski appeals from a judgment entered on January 26, 1994 in the United States District Court

for the District of Connecticut (Cabranes, then-Chief Judge),* dismissing his complaint. In his complaint, Kamasinski challenged the confidentiality provisions of Conn.Gen.Stat. § 51–51*l*, which relate to proceedings before the Connecticut Judicial Review Council ("JRC"), on First Amendment grounds 843 F.Supp. 811. Under section 51–51*l*, the proceedings of the JRC, the body charged with investigating complaints against judges, are confidential until the JRC determines that there is probable cause to believe that judicial misconduct has occurred. According to the statute, a complainant or witness before the JRC cannot disclose the fact that the JRC investigation is under way and cannot disclose any information he or she may have gleaned through interaction with the JRC. The district court held that the statute did not run afoul of the First Amendment. For the reasons that follow, we affirm the judgment entered in the district court and hold that the confidentiality provisions of Conn. Gen.Stat. § 51–51*l* do not violate the First Amendment.

## BACKGROUND

The State of Connecticut, like numerous other states, has established a Judicial Review Council ("JRC") for the purpose of investigating and disposing of complaints lodged against its judicial officers. The proceedings of Connecticut's JRC have two distinct phases. The first is a confidential preliminary investigation in which the JRC determines whether there is probable cause that judicial misconduct has occurred. Conn. Gen.Stat. § 51–51*l* (a). The second phase of the JRC's proceedings begins when the JRC determines that there is probable cause to believe that judicial misconduct, as described in Conn.Gen.Stat. § 51–51i, has occurred. Following such a finding, the JRC must conduct an open hearing, and all proceedings are to be conducted on the record. *Id.* § 51–51*l* (c). No later than fifteen days following the close of that hearing, the JRC must publish its findings and a memorandum stating the reasons therefor. *Id.* The JRC may publicly censure a judge, suspend a judge for a period not exceeding one year, or refer a

complaint with a recommendation for other disposition to the Connecticut Supreme Court or the Governor. *Id.* § 51–51n. Decisions of the JRC may be appealed to the Connecticut Supreme Court by an aggrieved judge. *Id.* § 51–51r.

Kamasinski began his challenge to the confidentiality provisions of the laws governing the JRC in February of 1991. At that time, Kamasinski challenged the then-existing Conn.Gen.Stat. § 51–51*l* in the United States District Court for the District of Connecticut, arguing that the confidentiality provisions of the statute violated the First Amendment. *See Kamasinski v. Judicial Review Council,* 797 F.Supp. 1083 (D.Conn.1992) (*"Kamasinski I"*). While there was some dispute as to precisely what the confidentiality provisions prohibited, they were construed by the district court as prohibiting disclosure of the substance of a complaint or testimony before the JRC, as well as disclosure by a complainant of the fact that a complaint was filed, and disclosure by a witness of the fact that testimony was given. They also were construed as prohibiting the disclosure of information that the complainant or witness obtained as a result of interaction with the JRC. *Id.* at 1089–90, 1097. The confidentiality provisions were in effect, however, only during the period before the JRC made a probable cause determination. *Id.* at 1090.

In deciding whether these provisions violated the First Amendment, the district court first noted that the restrictions were content-based and therefore were required to be " 'necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end.' " *Id.* at 1090 (quoting *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988)). The district court then discussed the distinction between "information before and information after the JRC finds probable cause," *id.,* and concluded that, before such a finding, a number of interests were served by keeping confidential the fact that an investigation was pending. In an extensive discussion, the district court noted that confidentiality before a finding of probable cause: (1) allowed the JRC to dispose of frivolous or harassing complaints

---

* Judge Cabranes is now a member of the Second    Circuit Court of Appeals.

without lending them credibility; (2) enhanced Connecticut's ability to attract highly qualified judges who might otherwise be deterred from service by the prospect of numerous public complaints being lodged against them; (3) ensured the independence of Connecticut's judiciary by reducing the possibility that judges would be intimidated or influenced by belligerent complainants; (4) encouraged complaints, assistance in investigations, and complete and truthful testimony; (5) allowed the JRC to informally encourage infirm or incompetent judges to retire prior to a public hearing; and (6) increased the ability of attorneys to monitor the judicial system without engendering the hostility of the judiciary. *Id.* at 1092–93. The district court then concluded that these interests were sufficiently compelling, under the strictest First Amendment scrutiny, to justify Connecticut's prohibition on disclosure of information acquired by virtue of interaction with the JRC. *Id.* at 1094 (citing *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 848, 98 S.Ct. 1535, 1546, 56 L.Ed.2d 1 (1978) (Stewart, J., concurring)).

The district court reached a different conclusion, however, with regard to the state's interest in keeping confidential the substance of an individual's complaint or testimony. Such information, the court noted, could just as well be disseminated to the media by the individual as put into a complaint before the JRC. *Id.* at 1094. Furthermore, the court noted, because the JRC has the power to subpoena witnesses, it could silence a potential witness simply by exercising that power. *Id.* The court therefore held that prohibiting the disclosure of an individual's own testimony was unconstitutional. *Id.*

In the wake of *Kamasinski I,* the State of Connecticut amended section 51–51*l* to provide as follows:

> Any investigation to determine whether or not there is probable cause that [misconduct] has occurred shall be confidential and any individual called by the council for the purpose of providing information shall not disclose his knowledge of such investigation to a third party **prior to the decision of the council on whether probable cause exists,** unless the respondent requests that such investigation and disclosure be open, **provided information known or obtained independently of any such investigation shall not be confidential** (amendments emphasized).

Despite the modification of the statute, Kamasinski informed the district court in December of 1992 that he wished to continue his lawsuit. He claimed that the statute, even as amended, violated the First Amendment. The defendants then moved to dismiss the complaint on the ground that plaintiff's claim was moot, because the plaintiff no longer had a complaint pending before the JRC. The district court granted this motion, but when the plaintiff filed a new complaint with the JRC, the district court agreed to reconsider its dismissal of the action. Finally reaching the merits, the court dismissed Kamasinski's action on the ground that section 51–51*l,* as amended, was "sufficiently narrowly tailored—in both duration and scope—to survive [Kamasinski's] constitutional challenge." *Kamasinski v. Judicial Review Council,* 843 F.Supp. 811, 815 (D.Conn.1994) ("*Kamasinski II* "). Kamasinski appeals from that determination.

## DISCUSSION

### 1. First Amendment Test

■ As noted above, the district court concluded that the restrictions at issue are content-based, and therefore that the challenged regulations must be necessary to serve a compelling state interest and be narrowly drawn to serve that end. We agree that the restrictions here are content-based, and that strict scrutiny is the correct standard. *See Baugh v. Judicial Inquiry and Review Comm'n,* 907 F.2d 440, 444–45 (4th Cir.1990); *accord Doe v. State of Fla. Judicial Qualifications Comm'n,* 748 F.Supp. 1520, 1525 (S.D.Fla.1990).

### 2. State Interests

Kamasinski first argues that under *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), and its progeny, the interests used to justify confidentiality in judicial disciplinary proceedings have not been found sufficiently compelling to support statutes challenged on

First Amendment grounds. *Landmark* involved a Virginia newspaper that had published an accurate report on a pending inquiry involving a state judge, including the judge's name. *Id.* at 831, 98 S.Ct. at 1537–38. The newspaper's publisher was indicted, tried, convicted and fined under a statute that provided for criminal penalties where any person, including newspapers uninvolved with an investigation of a judge, disclosed information regarding the inquiry. *Id.* at 830–33, 98 S.Ct. at 1537–38. The case was appealed to the Supreme Court, which, in reversing the conviction, explicitly noted that it was not presented with the question of "a State's power to keep [such an investigatory body's] proceedings confidential or to punish participants for a breach of this mandate." *Id.* at 837, 98 S.Ct. at 1540. *Landmark* did not deal with the issues before us and therefore provides no support for plaintiff's position. Moreover, the discussion of the issues that were raised in *Landmark* provides support for the defendants' position.

The *Landmark* Court listed four state interests served by confidentiality in the early period of the investigation: (1) encouraging the filing of complaints; (2) protecting judges from unwarranted complaints; (3) maintaining confidence in the judiciary by avoiding premature announcement of groundless complaints; and (4) facilitating the work of the commission by giving it flexibility to accomplish its mission through voluntary retirement or resignation of offending judges. *Id.* at 835–37, 98 S.Ct. at 1539–41. The Court assumed that these interests were legitimate. *Id.* at 841, 98 S.Ct. at 1542–43. In a concurring opinion, moreover, Justice Stewart described these interests more generally as the state's interest in the "quality of its judiciary," and stated that there could "hardly be a higher governmental interest." *Id.* at 848, 98 S.Ct. at 1546.

█ As noted above, the district court in *Kamasinski I* supplemented the interests identified in *Landmark* with the state's interests in attracting qualified judges, increasing assistance with investigations, procuring complete and truthful testimony, insuring the independence of the state's judiciary, and increasing outsiders' ability to monitor the judiciary. Furthermore, it is instructive that Congress has concluded that confidentiality of inquiries into federal judicial misconduct is of great value. *See* 28 U.S.C. § 372(c)(14) (all papers, documents and records of investigations into judicial misconduct are confidential). The state's interest in the quality of its judiciary, we conclude, is an interest of the highest order.

### 3. Categories of Information

The cases analyzing the confidentiality of state investigations indicate that information that individuals may wish to disclose falls into three categories. First, there is the substance of an individual's complaint or testimony, i.e., an individual's own observations and speculations regarding judicial misconduct. Second, there is the complainant's disclosure of the *fact* that a complaint was filed, or the witness's disclosure of the *fact* that testimony was given. The third category is information that an individual learns by interacting with the JRC, such as information gained by hearing the testimony of other witnesses or comments made by members of the JRC. Each category involves differing First Amendment interests, and each will be discussed separately.

█ Whether the state may prohibit the disclosure of the substance of an individual's complaint or testimony merits little discussion. Penalizing an individual for publicly disclosing complaints about the conduct of a government official strikes at the heart of the First Amendment, *see Mills v. Alabama,* 384 U.S. 214, 218–19, 86 S.Ct. 1434, 1436–37, 16 L.Ed.2d 484 (1966), and we agree with the district court that such a prohibition would be unconstitutional.

█ A different question is presented by the second category of information—the fact that a complaint has been filed or that testimony has been given. The distinction between information that the individual obtains independently, and the *fact* that testimony has been given to the investigatory body was noted in Justice Scalia's concurrence in *Butterworth v. Smith,* 494 U.S. 624, 636–37, 110 S.Ct. 1376, 1383–84, 108 L.Ed.2d 572 (1990). In that opinion, Justice Scalia suggested that

a witness's disclosure of the fact that he conveyed certain information to a grand jury is distinct from disclosure of the information itself, and that the former might be subject to greater regulation than the latter. *Id.*

The *Kamasinski I* court held that Connecticut could constitutionally prohibit the disclosure of the fact of filing, placing it at odds with the district court that decided *Doe v. State of Fla. Judicial Qualifications Comm'n,* 748 F.Supp. 1520 (S.D.Fla.1990). In that case, the court held that Florida had "failed to set forth any compelling interests alone or in concert sufficient to justify" a prohibition of disclosure of the fact that a complaint was filed. *Id.* at 1529. The *Doe* court summarized the state's interests as: (1) the protection of the reputations of individual judges as well as the judiciary as a whole, thereby preventing an undue loss of public confidence; (2) avoidance of the possibility that a complainant might use publication of the fact that a complaint had been filed as a "bully pulpit"; (3) facilitation of effective investigations; and (4) protection of the judges' constitutional right of privacy. *Id.* at 1526. The *Doe* court, however, failed to adequately recognize the manner in which the state's interests are furthered by limited confidentiality.

First, the *Doe* court discounted the "bully pulpit" effect, stating that the danger that publication of the filing of a complaint will result in an overvaluation of its merits is "largely illusory." *Id.* at 1527–28. Distinct from a fear that the public will overvalue the complaint, however, is the fear that, armed with the ability to make the fact of a complaint public, complainants will engage in a campaign of harassment. This may result in influences that lead to the loss of judicial independence as well as an overburdening of the JRC with frivolous complaints. The *Doe* court also discounted the value of confidentiality in facilitating the investigative process, and did not consider that a "common result of publication will be that witnesses otherwise willing to speak candidly will decline to do so, in the knowledge that the media and others will pursue them to inquire whether they have in fact testified." *Kamasinski I,* 797 F.Supp. at 1095–96. Nor, finally, did the

*Doe* court take into account the state's significant interest in encouraging infirm or incompetent judges to step down voluntarily, a likelihood that is greatly reduced after publication that complaints have been filed against them. *See, e.g., Landmark,* 435 U.S. at 835–36 & n. 7, 98 S.Ct. at 1539–40 & n. 7; *First Amendment Coalition v. Judicial Inquiry and Review Board,* 784 F.2d 467, 476 (3rd Cir.1986) (in banc) ("In practice, it has been demonstrated that one of the most effective methods of meeting the problem of the unfit judge is to remove him from the bench by voluntary retirement or resignation."). Recognizing the full account of Connecticut's interests in preserving the integrity of its judiciary, we conclude that the limited ban on disclosure of the fact of filing or the fact that testimony was given does not run afoul of the First Amendment.

■ Having concluded that the First Amendment permits Connecticut to prohibit a complainant's disclosure of the fact that he has filed a complaint, or a witness's disclosure of the fact that he has testified, we turn to the question whether Connecticut may, without violating the First Amendment, prohibit the disclosure of information gained through interaction with the JRC. We conclude that it may. If individuals were allowed to disclose comments made by JRC members, or other information gained through their interaction with the JRC, the Connecticut interests referred to above would not be served, as the proceedings of the JRC would effectively be made open.

■ The Third Circuit addressed this issue in *First Amendment Coalition,* 784 F.2d at 467. The court there held that, before Pennsylvania's Judicial Inquiry and Review Board made a recommendation to the state Supreme Court that a judge be disciplined, witnesses who came before the Board could be prohibited from disclosing the testimony of others whom they heard testify and comments made by members of the board or staff. *Id.* at 479. In so holding, the court noted that the functions of Pennsylvania's Review Board were "similar to those of a grand jury," and identified interests in confidentiality very similar to those outlined in *Kamasinski I. Id.* at 473, 475–76. In fact,

the court rested its holding on a finding of fewer interests. *Id.* All of the interests served by prohibiting disclosure of the fact that a complaint has been filed are implicated when an individual desires to disclose information gained through interaction with the JRC. It bears repeating, however, that the ban on disclosure is constitutional only so long as the JRC acts in its investigatory capacity. Once the JRC has determined whether or not there is probable cause that judicial misconduct has occurred, even Connecticut's most compelling interests cannot justify a ban on the public disclosure of allegations of judicial misconduct.

## CONCLUSION

The judgment of the district court is AF-FIRMED.